JOHN W. CRISLER ET AL. *v.* FARRAR MORRISON.

57 791
f92 287

1. CONTESTED ELECTIONS. *County office. Summons. Jurisdiction.*
   In a case of contested election for a county office, under the act of March 5, 1878 (Acts 1878, p. 173), failure of the justice of the peace to issue and make returnable the summons within twenty-five days after the election establishes *prima facie* want of jurisdiction, which can be met by the contestant, if at all, only by averment and proof that the delay was not the result of his concurrence or neglect.

2. SAME. *Prohibition. Alternative writ. Petition.*
   Upon the sworn petition of the defendant in such a case, stating the facts, and averring that the summons was not issued when the petition for contest was filed by direction of the contestant, who is illegally proceeding to procure a verdict, an alternative writ of prohibition may issue, returnable to the Circuit Court, notwithstanding the right of appeal without *supersedeas*, to the same tribunal under the statute.

3. SAME. *Practice in prohibition proceedings: Declaration. Waiver.*

The contestant and justice, who appear to the alternative writ, cannot compel the petitioner in the prohibition proceeding to file a declaration without showing a disputed fact, to be settled before the absolute writ is directed to issue ; and, if they acquiesce in the hearing of his motion for an absolute writ for want of an answer to his petition, they waive their prior motion for a declaration.

ERROR to the Circuit Court of Hinds County.

Hon. S. S. CALHOON, Judge.

*J. W. Jenkins* and *H. R. Ware*, for the plaintiffs in error, filed a brief, and each argued the case orally.

1. The summons for Morrison in the contested election case was issued legally as to time, and, if not, this would not take from the justice jurisdiction, but simply present a question of limitation. Acts 1878, p. 173. The only limitation is in the time of filing the petition, which must be "within twenty days after the election." That was done in this case. It is nowhere said that the summons shall issue within that time. The law merely provides that "the justice shall thereupon issue a summons." The word "thereupon" does not in this connection refer to time, but to the cause, reason or authority for issuing the writ. Its use in similar connections elsewhere in our statutes clearly establishes this view. Code 1871, §§ 389, 390, 1305, 1319, 1326, 1338. The Supreme Court of Maine gave to the word the same construction when used in pleading. *Bean* v. *Ayers*, 67 Maine, 482. Under the decision in *Ex parte Wimberly*, *ante*, 437, the contest is limited to the first Monday in January. No evil consequences, therefore, can result from this construction. The filing of Crisler's petition within the time prescribed by law gave the justice jurisdiction of the case, with power to do all things necessary to bring the defendant into court, make up the issue, and proceed to final judgment. He did not lose that jurisdiction by delaying the issuance of the summons five days. The delay being a matter of limitation only, it was a personal privilege, and could be pleaded or not, as the defendant saw proper, and did not affect the jurisdiction of the court. *Commercial Bank* v. *Martin*, 9 S. & M. 613 ; *Doe* v. *McDonald*, 27 Miss. 610.

2. The writ of prohibition is not the proper remedy in a case like this. Its office is not to correct the errors of inferior courts, but to prohibit them from assuming jurisdiction not given by law. Before a court will be authorized to grant the writ, it must determine that the cause originally, or some collateral matter arising therein, does not belong to the inferior court, but to the cognizance of some other tribunal. 3 Black. Com. 83, 84; *State* v. *Judge*, 11 La. Ann. 696; *People* v. *Wayne Circuit Court*, 11 Mich. 393; *People* v. *Seward*, 7 Wend. 518; *People* v. *Marine Court*, 36 Barb. 341; *Law* v. *Crown Point Mining Co.*, 2 Nev. 75; *State* v. *Judge*, 11 Wis. 50; Bacon's Abr. title Prohibition; *Clayton* v. *Heidelberg*, 9 S. & M. 623; *Planters' Ins. Co.* v. *Cramer*, 47 Miss. 200. The misinterpretation of a statute by an inferior court, the consideration of which arises incidentally in a proceeding which is within its jurisdiction, is a matter of appeal rather than a ground for prohibition. *Mayo* v. *James*, 12 Gratt. 17; *Home* v. *Earl Camden*, 2 H. Black. 533; Bacon's Abr. title Prohibition; *Grant* v. *Gould*, 2 H. Black. 69; *State* v. *Wakely*, 2 Nott & McCord, 410; *Washburn* v. *Phillips*, 2 Met. 296. The writ of prohibition will never lie when the right of appeal is given. *Law* v. *Crown Point Mining Co.*, 2 Nev. 75; *People* v. *Marine Court*, 36 Barb. 341; *People* v. *Court of Common Pleas*, 43 Barb. 278; 7 Com. Dig. 141; *People* v. *Seward*, 7 Wend. 518; *Arnold* v. *Shields*, 5 Dana, 18; *Ex parte Hamilton*, 51 Ala. 62. The law under which the contested election case was brought gives the right of appeal. Acts 1878, p. 174.

3. The Circuit Court had no power to refuse the motion of the plaintiffs in error to compel the defendant in error to file a declaration. If the defendant in a writ of prohibition demands that a declaration shall be filed, the court must require it to be done, so that an issue may be made up to try the truth of the allegations of the petition upon which the writ was granted. Bacon's Abr. title Prohibition; *Mayo* v. *James*, 12 Gratt. 17; *Home* v. *Earl Camden*, 2 H. Black. 533; *Ex parte Williams*, 4 Pike, 537; 7 Com. Dig. 171.

*W. L. Nugent*, for the defendant in error, made an oral argument.

*Nugent & Mc Willie*, on the same side.

1. Writs of prohibition were granted in England both in the Common Pleas and King's Bench. They lay where an inferior court was proceeding without jurisdiction, or where the jurisdiction properly belonged to another court, or where the inferior court transcended its jurisdiction, or where a plaintiff had one demand and split it into several actions, so as to give an inferior court jurisdiction, or where the judges proceeded in cases where they were prohibited by act of Parliament. *Ex parte Williams*, 4 Pike, 537; *Arnold* v. *Shields*, 5 Dana, 18; *Mayo* v. *James*, 12 Gratt. 17; *Withers* v. *Commissioners*, 3 Brev. 83. The writ may issue where there is an undue exercise or unlawful stretch of delegated power, or to prevent the exercise of unauthorized power in a cause or proceeding of which the subordinate tribunal has jurisdiction no less than where the entire cause is without its jurisdiction, or where, in handling matters within its jurisdiction, an inferior tribunal transgresses the bounds prescribed to it by law. It issues upon a suggestion that the cause originally, or some collateral matter arising therein, does not belong to that jurisdiction, and its office is to prevent the exercise by a tribunal possessing judicial powers, of jurisdiction over matters not within its cognizance, or to prevent it from exceeding its jurisdiction in matters within its cognizance. *Planters' Ins. Co.* v. *Cramer*, 47 Miss. 200; *Clayton* v. *Heidelberg*, 9 S. & M. 623; *Quimbo Appo* v. *People*, 20 N. Y. 531, 541; *Zylstra* v. *Corporation of Charleston*, 1 Bay, 382; *State* v. *Ridgell*, 2 Bailey, 560; *Commissioners* v. *Spitler*, 13 Ind. 235; *Thomson* v. *Tracy*, 60 N. Y. 31; *State* v. *Brown*, 31 Wis. 600.

2. In view of these authorities the alternative writ was properly issued in this case, if the magistrate had no jurisdiction to issue the summons after the lapse of twenty days, and this we now consider. The statute is imperative. The petition to contest the election must be filed within twenty days; it must set forth the grounds of contest; the magistrate shall thereupon issue a summons returnable five days after the filing of the petition; he shall make up the issue and summon and impanel a jury to try it. Acts 1878, p. 173. The proceeding

is special and summary. It derives vitality from the statute, and its life and vigor depend upon and are controlled by the statute. *Keller* v. *Chapman*, 34 Cal. 635. The issuance of the writ within the time limited goes to the root of the whole controversy; it is jurisdictional in character. Otherwise, the magistrate might wait six months, or a year, if the petition were filed within twenty days; and long after the issuance of a commission to the party returned elected, and his installation in office, his right to the office, the duties of which he had undertaken, might be the subject-matter of contest. The letter and spirit of the law are against such a construction. *Ex parte Wimberly*, *ante*, 437; *Lindsey* v. *Luckett*, 20 Texas, 516; *Hyde* v. *Trewhitt*, 7 Cold. 59; *State* v. *Stewart*, 26 Ohio St. 216; *Dickey* v. *Reed*, 78 Ill. 261; *Harrison* v. *Lewis*, 6 W. Va. 713. The rule should be applied much more strongly here, because Crisler is himself responsible for the delay in the issuance of the summons. He did not demand the issuance of the writ, but directed it not to be issued. *Allen* v. *Mandaville*, 26 Miss. 397; *Lamkin* v. *Nye*, 43 Miss. 241; Angell on Lim. § 312. The petition to contest the election does not set forth specifications, but deals wholly in conclusions of fact, and if admitted or proved would not entitle Crisler to the office. *Harrison* v. *Lewis*, 6 W. Va. 713; *Lanier* v. *Gallatas*, 13 La. Ann. 175; *Taylor* v. *Taylor*, 10 Minn. 107; *Wilson* v. *Lucas*, 43 Mo. 290.

3. After the motion of the defendant in error for a peremptory writ, because the defendants below had not answered the petition but confessed its allegations of fact, was sustained, the defendants below moved the court to compel the plaintiff to declare in prohibition, and the motion was overruled. It is here insisted that the lower court erred. The practice pursued in this case is the modern practice, as held in *Arnold* v. *Shields*, 5 Dana, 18, and the declaration was wholly unnecessary after the case was decided. It was the rule at common law, because without it there could be no writ of error. It now rests wholly in the discretion of the court. *State* v. *Allen*, 2 Ired. 183; *Mayo* v. *James*, 12 Gratt. 17. The facts were all admitted to be true, and the declaration was not called for until the case was decided. There was no

reason, therefore, for a declaration. *Ex parte Williams*, 4 Pike, 537 ; *State* v. *Milwaukee Common Council*, 20 Wis. 87, 89 ; *Wells* v. *Milwaukee Railway Co.* 30 Wis. 605 ; *People* v. *College of Physicians*, 7 How. Pr. 290 ; *Mayo* v. *James*, *ubi supra* ; *Supervisors of Culpeper* v. *Gorrell*, 20 Gratt. 484 ; High on Ext. Legal Remedies, § 799. Besides, our statutes abolish all common-law fictions. Code 1871, §§ 576, 577.

GEORGE, C. J., delivered the opinion of the court.

On the 22d day of November, 1879, one of the plaintiffs in error, Crisler, filed before G. M. Lewis, a justice of the peace of Hinds County, his petition against the defendant in error, for the purpose of contesting the latter's election to the office of sheriff of that county. Certain grounds were stated in the petition, on which the plaintiff's right to the office was founded. As to the sufficiency of these grounds, it is unnecessary to express any opinion, as, under our view, the rights of the parties can be settled without determining the questions raised on the sufficiency of the petition in this respect. On the 27th day of the same month, the justice of the peace issued a summons for Morrison, returnable on the 2d day of December. The summons was executed on the day it was issued. On the return of the summons, Morrison appeared, and moved to quash the summons on several grounds, one of which was, that it was issued after the expiration of the time within which, by law, it could be issued. This motion was overruled, and Morrison then protested against the further action of the court in this proceeding, and moved the court to dismiss it, because it was instituted and was being prosecuted in contravention of the Constitution and laws of the State and of common right. This motion was also overruled. A jury was then organized to try the issue, and a witness sworn and placed on the stand, when a rule *nisi* for a writ of prohibition was served on the justice of the peace and Crisler. The rule was entered on the 9th day of December, 1879, by the circuit clerk of Hinds County, upon the fiat of one of the associate justices of this court. This fiat was based on a petition of Morrison, verified by his oath, in which he set out the foregoing proceedings before the justice of the peace. The

petition further set out that when the petition was filed before the justice of the peace, no summons was issued on it by the express direction and consent of the petitioner, and claimed as matter of law that said summons could not be legally issued and be made returnable after the expiration of the twenty days from the election in which the statute required the petition to be filed, and after the additional five days provided by the statute, at the end of which it was to be made returnable; that the election was held on Nov. 4, 1879, and the summons was made returnable on Dec. 2, following, and that the latest day on which the summons could be made returnable was Nov. 29. The petitioner claimed that, owing to this delay, the justice of the peace never acquired jurisdiction of the cause. The petition also stated that the justice of the peace was hostile to the petitioner, and took an active part in the election against him; that he held his court in the country, five miles from any city or town, where there were no accommodations for man or beast, and no sort of protection against the inclemency of the weather, and no means of adequately preparing for the petitioner's defence; that, during the day, the house in which the court was held was crowded to suffocation by the number of attending witnesses; and that the whole proceeding was begun and was being conducted to procure an illegal and fraudulent verdict.

At the January term of the Circuit Court, from which the alternative writ of prohibition issued, the plaintiffs in error, Crisler and Lewis, filed a motion, in which they insisted that the petitioner should file a declaration, and asked the court to compel the filing of such declaration. This paper was filed on Jan. 6, 1880. On the next day, without any disposition having been made of the former motion, and without, so far as the record shows, the attention of the court being called to it, they made another motion, asking the court to dismiss the alternative writ of prohibition, because the same was illegally and fraudulently issued. On the next day to this, the petitioner filed his motion that the rule *nisi* be made final and absolute and a writ of prohibition issue, because no answer had been made to the petition on which the rule *nisi* was based and no cause to the contrary had been shown. On the 10th of

January, as the judgment of the court recites in the cause of *Farrar Morrison* v. *Crisler and Lewis*, the parties came by their attorneys, and thereupon came on to be heard, the motion of the defendants, to dismiss the writ of prohibition issued and served in this case, because the same was illegally and fraudulently sued out, as well as the motion of the plaintiff to make the said writ final and absolute, no answer being filed by the defendants; and, after argument, the court overruled the motion to dismiss, and sustained the motion to make the rule absolute, and ordered the writ of prohibition to issue. After the judgment, the motion entered on Jan. 6, to compel the plaintiff to file a declaration, was heard and overruled.

The first and most important question presented by the record is, whether, under the facts shown in the petition, the justice of the peace had any jurisdiction to try the case? The powers of a justice of the peace, and of the tribunal organized by him, for the trial of an issue arising out of a contested election, are special and limited, — special, in that they are specifically enumerated in the statute; and limited, in that they are restricted in operation by the circumstances associated with their exercise in the statute. They are no part of his general jurisdiction. The statute (Acts 1878, p. 173) provides that any person desiring to contest any county election "may, within twenty days after the election, file a petition before any justice of the peace of such county, setting forth the grounds upon which said election is contested; and the justice shall thereupon issue a summons to the party whose election is contested, returnable five days thereafter, which summons shall be served as in other cases." The object of the statute was to secure a speedy trial of such issues, so that it might be determined by the first Monday in the succeeding January, when the term of the officers elected in the preceding November begins, who were properly elected. The question to be settled by the trial is not one in which the contestants alone are interested. The State also has an interest that a majority of the electors shall have their choice as made known in the manner prescribed by law, and that no one shall usurp or fraudulently acquire an office contrary to law. *Lindsey* v. *Luckett*, 20 Texas, 516. In *Searcy* v. *Grow*, 15 Cal. 117, it was held by the court

that the public is interested in a contest of this character; it is not a matter solely between the parties to the record; and the popular will (as shown by the certificate of the returning officers) is not to be set aside upon the mere failure of a party to respond to charges alleged against his right. On these principles the Supreme Court of Texas, in the case heretofore cited, held, that the time prescribed by the statute, in which proceedings to contest an election shall be commenced, was essentially jurisdictional; and that, the proceedings not having been commenced within that time, the judgment of the court was void, and did not deprive the party having the certificate from the proper election-officers of his right to the office. There can be no controversy, therefore, that if Crisler had failed to file his petition within the twenty days, he could not afterwards effectually file it. Does the same rule apply to the issuance and return of the summons? This writ is just as essential as the petition. Neither, without the other, had any legal value whatever. The statute seems to contemplate that the summons should issue immediately upon the filing of the petition; and it is expressly required to be made returnable five days after such filing. Unless we adopt this construction, there is nothing in the statute to prevent the issuance and return of the summons, at any time during the succeeding two or four years, as the case may be, which constitutes the term of office of the officer whose right is contested. If the summons was allowed to be issued at any time subsequent to the filing of the petition, the provision requiring the filing of the petition within twenty days after the election, performs no useful office, and might as well have been omitted from the statute. We have seen that the object of the statute was to secure a speedy settlement of all contested elections, and this object cannot be accomplished on any other construction than the one we have adopted. To allow the filing of the petition, within the time prescribed, as a sufficient compliance with the statute, leaving it to the contestant to go on or not at any future time with the contest, would moreover be followed by most deleterious consequences to the public service. Under this view, the filing of the petition would be but a threat to contest at some future time, to be carried out or not according

as the petitioner might succeed or not in securing terms of compromise or settlement from the person declared elected. This would tend to bring about improper compromises and arrangements between individuals concerning the incumbency of public offices, which, under our system, ought only to be determined by the qualified voters of the county. During the period in which the threatened contest should remain unsettled, the efficiency and the authority of the officer would be diminished, and the excitement, animosities and partisan feelings necessarily engendered during the canvass preceding the election, and which generally subside at its termination, would be kept alive to the great detriment of the public. But it is argued, in opposition to this view, that, according to the principles which have been settled in this court, the contest is contemplated by the statute to terminate by the first Monday in January next succeeding the election; and that this decision would prevent the issuance of the summons after that time, and hence, the consequences we have mentioned could not follow from the construction we have condemned. The answer to this is that, but for the construction we have adopted, there is nothing in the statute which could authorize the court to make the announcement above referred to. The idea that time is essential in election proceedings is a familiar one. Elections can only be held on the day and within the hours fixed by law. The inspectors have no power to receive a ballot on any other day, or even on the proper day before or after the hours prescribed by law, whatever reason to the contrary may be urged by the electors. The legislature must, therefore, have meant that a real, and not a merely colorable and threatened contest, to be perfected and consummated or abandoned at the will of the contestant, should be inaugurated within the time prescribed by the statute. Without the issuing of the summons, nothing could be done which would have any validity. It is unnecessary to decide whether it was essential that the summons should be issued immediately upon the filing of the petition, if it were actually issued and made returnable within the longest period, viz., twenty-five days, allowed by the statute for its return, since in this case it was not made returnable until after that time. Nor is it necessary to decide

whether the mere failure of the justice of the peace to issue
the summons on the filing of the petition within the prescribed
time would defeat his jurisdiction.   The fact that the statute
gives the right to the contestant to select from the justices of
the peace in the county that one before whom he will file his
petition, and the resulting agency of the justice of the peace
thus selected by the petitioner in the mere ministerial act of
issuing the summons, might with great force be urged in sup-
port of the view that the jurisdiction would not be acquired,
if the failure to issue the summons was the result alone of the
omission of that officer.   We now only hold that the failure
to issue the summons in proper time establishes *prima facie* the
want of jurisdiction ; and that this *prima facie* case can only be
overturned, if at all, by the averment and proof on the part of
the contestant that the delay was not the result of his con-
sent, concurrence or neglect in demanding the issuance of the
writ in proper time.

This brings us to the consideration of the question as to the
propriety of the issuance of the writ of prohibition.   The
object of this writ is not only to prevent courts from usurping
a jurisdiction not conferred on them by law so as to preserve
the rightful powers of other courts, but it will lie against a
pretended court usurping a jurisdiction which belongs to no
other court.   Bacon's Abr. title Prohibition.   This latter is
one of its most useful offices, for, as was said in *Ex parte
Roundtree*, 51 Ala. 42, 51, " the usurpation of judicial power —
the holding of pretended courts — is a great public wrong, pro-
ductive of uncertainty and confusion ; beclouding the title to
property, vexing and harassing the citizen, involving him in
a conflict of duties, subjecting him to oppression, and detracting
from the dignity and authority of the known and established
tribunals.   It would be a reproach to the law and to justice, if
there was not a speedy remedy to prevent such usurpation."
To the same effect is *Arnold* v. *Shields*, 5 Dana, 18.   This
court, thus organized by the justice of the peace without au-
thority of law, partakes very much of the character of, if
it is not exactly, the pretended court described in the quotation
above made.   Such a tribunal, owing to its defective organiza-
tion, has no power or jurisdiction whatever.   It cannot even

exercise the powers which by law were vested in justices of the peace acting separately. Organized in any other mode or at any other time than prescribed by law, it has no more power than the same number of private citizens associated by their own will for the performance of judicial functions. If in any case a writ of prohibition is proper, it should issue to prohibit such a tribunal from exercising the usurped power of reversing the will of the voters of the county as declared by the properly constituted officers.

It is, however, said that the right of appeal was given by the statute; and when such right is given, the writ will not be issued. If this tribunal is conceded to have enough of colorable judicial authority to authorize it to grant an appeal, still the rule invoked will not apply here. It is unnecessary to determine exactly the rule by which courts are governed in refusing to grant the writ, because an appeal or writ of error or of *certiorari* will lie. It is certain that, when it is refused on that ground, the remedy by revisory proceedings must be adequate. In this case the remedy is not adequate to the mischief either to the contestee or to the public. Morrison would be deprived of the emoluments of the office till the adverse judgment could be reversed, and the public would be subjected to the jurisdiction and power of an officer whose only title to the office would be the judgment of an illegal tribunal. For it must be noted that the argument we are now answering — viz., that the remedy for the admitted exercise of usurped power is by appeal — concedes that Morrison is lawfully entitled to the office, and that his ejection by this tribunal would be unlawful. The case is clearly within the rule laid down by this court in *Planters' Ins. Co.* v. *Cramer*, 47 Miss. 200, where it was said that when an appeal lay, the writ would not issue, except the matter was urgent, and likely to result in great mischief. In a clear case of usurpation like this, the courts have refused to consider the right of appeal as a reason for denying the writ. Thus in *Quimbo Appo* v. *People*, 20 N. Y. 531, 542, it was said, " The writ was never governed by any narrow technical rules, but was resorted to as a convenient mode of exercising a wholesome control over inferior tribunals. The scope of this remedy ought not to be abridged, as it is far better to prevent

the exercise of an unauthorized power than to be driven to the necessity of correcting the error after it is committed." And in *State* v. *Judge*, 20 La. Ann. 239, the court said, " Where it clearly appears that a judge is exceeding his jurisdiction, or is without jurisdiction, the writ of prohibition may issue to restrain him, and that the complaining defendant should not be required to await an expensive and vexatious litigation, in order to obtain relief by appeal." To the same effect is *Worthington* v. *Jeffries*, L. R. 10 C. B. 379. These authorities go further than is necessary to sustain the writ in this case.

It is next urged in opposition to the action of the court below, that the motion of the plaintiffs in error to require a declaration to be filed, should have been granted. The right which existed at common law in the defendant in prohibition to demand the filing of a declaration, does not exist in this State for obvious reasons. In *St. John's College* v. *Todington*, 1 Burr. 158, Lord Mansfield said, " When the court is clearly of opinion that there is sufficient ground for the prohibition, the defendant has a right to put the plaintiff to declare ; that his jurisdiction may not be taken from him in a summary way, where no writ of error will lie." The right was put solely upon the ground that, without it, the defendant would not be entitled to a writ of error, to revise the judgment thus rendered against him. The right to a writ of error in prohibition proceedings does not at all depend, in this State, upon the fact that the judgment of the court below was rendered upon regular proceedings by declaration, plea, or demurrer. An examination of the original record in the High Court of Errors and Appeals, in the case of *Donovan* v. *Vicksburg*, 29 Miss. 247, shows that the judgment there was rendered on the petition alone, and a writ of error was maintained and the judgment reversed without any suggestion that the writ of error was improperly sued out. If the writ could not be maintained except after declaration filed, the controversy we are now settling could not have arisen before us, since we would, in that view of the law, have been compelled to dismiss the writ for want of jurisdiction. It is thus shown that the main ground for the right to demand a declaration, as it was recognized in England, does not exist here, and *cessante*

*ratione legis cessat ipsa lex.* The other ground on which a declaration might be required to be filed was when the court deemed the point too nice or doubtful on the law or facts to be decided upon motion. High on Ext. Legal Remedies, 575; *Supervisors of Culpeper* v. *Gorrell,* 20 Gratt. 484. On the face of the record of the justice of the peace, filed with the petition, the points involved were not nice or doubtful. On the record as it stood, the tribunal was clearly without jurisdiction, and there was no possibility of maintaining the jurisdiction, except upon the averment by Crisler that the delay in issuing the summons was the sole act of the justice, and was without his consent and contrary to his demand and wishes. It is even doubtful, as before stated, whether he would be allowed to make this averment. But proceeding on the theory that he had such right, it was his duty, in making the request of the court, to show, by suggestion at least, that there existed a fact *dehors* the record — which could be proved, and when established would show that the court had jurisdiction. Without such averment on his part, there was no case in which there could be any doubt or nicety, requiring more formal proceedings for the determination of the controversy; and there remained before the court only a clear case for the granting of the writ, in which, as we have shown, the right to demand a declaration does not exist in this State. A declaration could perform no useful office unless there was an issue to be settled by a jury, and no such issue was asked for or suggested. Moreover, all fictions in pleading are abolished by our statute (Code 1871, § 576), and the declaration at common law in prohibition was based on the fiction that a writ of prohibition had been granted, and had been violated by the defendants; and the use of such fictions is absolutely prohibited by § 577 of the Code. The declaration under our system is correct when it contains "a clear statement of the cause of action, in concise and ordinary language." This was contained in the petition on which the prohibition proceedings are founded. If a declaration had been filed, it would have been but a repetition of the facts stated in the petition, and such filing was unnecessary for the development of the facts, and unnecessary,

also, to prevent the determination of the case in a summary way on a mere motion, which seems to be the object for requiring it to be filed in England. In a similar case the Court of Appeals of Virginia, in *Supervisors of Culpeper* v. *Gorrell*, 20 Gratt. 484, 523 *et seq.*, decided that a declaration would not be required in a case originating in that court. This shows that the right to demand a declaration is not absolute, as in England, where it was given in order to secure the party a right of appeal. Some ground must be shown for the demand. Some right of the party making it must be alleged, which a declaration would subserve or protect. This was not done in this case. The defendants might have pleaded to or answered the petition, as was done in the case from Virginia, above cited, and as was recognized to be correct in *Donovan* v. *Mayor*, *ubi supra*, by the High Court of Errors and Appeals of this State. The demand, as shown in this record, was based upon a supposed absolute right to have a declaration, not upon a necessity for it in order to the proper determination of the case. If a sufficient reason was given to the court for a declaration, it is not disclosed by the record. In the absence of such a showing, we are bound to hold that the action of the court in refusing the demand was correct. Moreover, it has been shown that the only office of the declaration, under our system, is to determine a disputed question of fact, which ought to be settled before the writ of prohibition is ordered to issue. With this single office of the declaration, not only the fact to be settled should have been suggested to the court before the judgment ordering the issuance of the absolute writ, but the hearing of the motion for the declaration, based on such suggestion, should have been insisted on before the rendition of such judgment. But in this case the defendants, if they did not agree, at least did not object to the trying of the motion, which asks for a final writ of prohibition, without first insisting on the trial of their motion for a declaration. This was a waiver of that motion, since it is wholly unwarrantable after the rendition of judgment to try an issue as to the existence of a fact on which the judgment is based. The settlement of the facts should precede, not follow, the judgment.

*Judgment affirmed.*