Chief Justice Robertson
delivered the Opinion of the Court:
This appeal is prosecuted for reversing a final judgment of prohibition, rendered on demurrer to a declaration filed by the appellees, as lessees of a ferry over the Ohio river, from Albany hi Indiana, to Portland in Kentucky, against the appellants — one of them as a justice of the peace, the other as the grantee of a ferry from the former place, across the same river; and founded on *19 an affidavit suggesting that one of the appellants, as a magistrate of Jefferson county, including Portland, had at the instance of his co-appellant; issued sundry warrants against the appellees jointly, for enforcing, in each case; the penalty of fifty dollars, denounced by a statute of this State, in 1836, against the owners and lessees of ferries from the Indiana shore, for passing in their own boats, or for transporting in them, any person or thing, from any point on the opposite shore embraced in Jefferson county; and also, suggesting that, judgment for the penalty of fifty dollars had been rendered in one of those cases, and that all the other cases were still pending; and therefore, praying for a writ of prohibition to prevent further proceedings on the judgment, as well as on the warrants.
Prohibition is an existing legal remedy in this state.
The Circuit Court having rendered judgment on the. declaration, for prohibition, according to the petition, the. only questions presented for revision are those arising-on the demurrer; and they may all be embraced in the following propositions:—
First. Had the Circuit Court jurisdiction?
Second. Was the declaration good?
First. The first inquiry may be subdivided into four subordinate questions:
(1.) Is an action in prohibition, maintainable here in any case?-
(2.) Is a Circuit Court an appropriate forum for the maintenance of such a proceeding for prohibiting a justice of the peace from acting in. a case coram non judice?
(3.) If a Circuit Court may take cognizance of any such proceeding — has it power to order a prohibition in a case which, though not within the jurisdiction of the inferior court in which it may be pending, would not have been within its, own cognizance, either original or revisory?
(4.) Had the magistrate jurisdiction over the cases respecting which the prohibition in this case was ordered?
First. Prohibition, being a useful and usual common law remedy, should be deemed applicable and proper here, unless abolished by statute or desuetude, or deemed inconsistent with our peculiar institutions. It has not been abolished by any positive enactments; nor can we *20 perceive any reason for considering it either obsolete or incongruous. Wherefore, we do not feel authorized to decide otherwise than that it is still here an existing legal remedy in an appropriate case.
As, by the com. law, (still in force here,) all superior courts are entitled to a general superintendence over their subordinate tribunals—the circuit courts have authority to issue writs, and render judg’ts, of prohibition, to restrain those tribunals and magistrates from whose judg’ts & orders appeals lie to the circuit courts, from exercising any arrogated jurisdiction.
The court of appeals—if it would proceed by prohibition in any case—would do so only whore the prohibition was to operate on a court whose proceedings it might revise in one of the ordinary modes: not where it was to restrain a J. P.
Prohibition lies to prevent a court from proceeding in, or exercising control over, a case of which it has no jurisdiction; and it is immaterial whether the case is one which belongs to a higher tribunal, or a matter of which no court can take cognizance,
Second. According to the common law, superior courts are entitled to a general superintendence over all subordinate courts, for the purpose of keeping them in their prescribed sphere, and of preventing usurpation: and therefore, in England, the King’s Bench and the Common Pleas have a general, and the chancellor a qualified, authority to restrain, by prohibition, all other courts inferior to them from exercising any arrogated jurisdiction. In this Commonwealth, the Circuit Courts bear towards the County Courts and justices of the peace a relation of superiority resembling, in all essential particulars, that of the King’s Bench over the inferior tribunals of England; and are the only Courts of original jurisdiction in which a common law suit in prohibition could be maintained. If a proceeding for prohibition may be instituted in the Court of Appeals, (a point we shall not now, discuss,) it could be done only in a case in which, in the exercise of its appellate jurisdiction, it has the power of controlling the inferior court by a direct revision of its judicial acts. Having no such power over justices of the peace, this Court, if it can grant a prohibition in any case, could not have ordered that which was directed by the Circuit Court. And consequently it seems to us, that, in such a case as this, the Circuit Court of Jefferson had jurisdiction if any court had.
Third. Although it is sometimes said, that the object of a prohibition is to prevent the usurpation, by an inferior, of jurisdiction which belongs to a superior court, nevertheless, it seems, not only to accord with reason and fitness, but to be well settled by authority, that an inferior tribunal may be prohibited from acting in a case in which no court would be entitled to cognizance. The fact that a court is attempting to exercise control over a case in which it has no right to act, is a sufficient ground for a prohibition, whether any other court would have jurisdiction or not. Thus, in England, it has been decided, that a prohibition would lie to a suit there before the *21 Pope's collector pro lesione fidei, because, although no other tribunal had jurisdiction, still the Pope's legate had no authority in England. Bro. Jurisdiction, 20; Comyn’s Dig. title Prohib. A. 2 & F. 1, 11. So likewise, if an inferior court attempt to act in a case in which no court has authority. 4 Mod. 151; Salk. 425. And, in the absence of authority, it would seem to be at least as proper to interfere by prohibition, in such a case of usurpation of power possessed by no court, as in a case of encroachment by an inferior on the jurisdiction delegated to a superior tribunal.
It does not lie to prevent any tribunal from deciding erroneously, or from enforcing an erroneous judg’t; but only where it assumes jurisdiction of a matter which it has no light to try.
Constitutional queries suggested, which might arrise upon the act of 1836, prohibiting owners and lessees of ferries established on the Indiana side of the Ohio, from ferrying any person or thing from Jefferson county in this State unless by agreement with the owner of a ferry on this side—but as to which no opinion is required or intimated; inasmuch, as the penalty ($50,) is within the general jurisdiction of a justice of the peace, who must decide all the questions in any case before him — including any that may arise upon the constitutionality of a Jaw that he is called upon to administer; and, the constitutionality of the act in question, must, therefore, be decided by a justice, in the first instance. For—
A contract, to pay a statutory penalty, is implied by law, and may be enforced— when no different exclusive mode is provided—by any court or magistrate that has jurisdiction of other debts of like amount, between the same parties. But—
Fourth. The authority of the Circuit Court to order the prohibition depends altogether on the assumed fact, that the justice of the peace had no jurisdiction over the cases in which he was attempting to proceed; for it is well settled that a writ of prohibition does not lie to prevent a court from deciding erroneously, or from enforcing an erroneous judgment in a case in which it has a right to adjudicate; but can be sustained only for preventing usurpation of judicial power by a court which has no authority to decide the case in which it assumes the right to act judicially.
The counsel for the defendants in error, conceding the correctness of the foregoing proposition, and admitting also (as we understood him) that, if the legislative enactment which the justice was attempting to enforce, and which declares that justices of the peace shall have jurisdiction to enforce the penalties denounced by it, be constitutional, his jurisdiction is unquestionable, and therefore the prohibition was extra-judicial—yet, insists, that the statute is unconstitutional, and that, therefore, as it could confer no authority, there was no jurisdiction in any court to render a judgment for the penalty prescribed for a violation of it.
Whether any provision in the act of 1836, should be deemed repugnant to that clause in the Federal consti *22 tution, which delegates to the Congress of the United States “power to regulate commerce” — including, as has been decided, trade and navigation — “between the States” —might be an interesting question: depending, for its proper answer (1.) on whether, notwithstanding the comprehensiveness of that grant of power to the National Legislature, a State may, nevertheless, exercise a concurrent authority not conflicting with any regulation, by Congress, as seems to have been, at least intimated by the Supreme Court of the United States; or, if this be not so, (2.) on whether the local power to regulate ferries — not being, according to judicial construction, surrendered by the States — would authorize a State to prohibit the transit of any person, or the transportation of any thing, across any of its rivers, otherwise than in a boat provided by the grantee of a ferry, under its authority.
And a still more interesting and decisive enquiry might be, whether the statute of 1836 is inconsistent with that provision in the fundamental compact between Virginia and Kentucky, which guaranties to the States opposite to them, on the Ohio, a concurrent jurisdiction, over that river.
Jurisdiction, unqualified, being, as it is, the sovereign, authority to make, decide on, and execute laws, a concurrence of jurisdiction, therefore, must entitle Indiana. to as much power — legislative, judiciary, and executive as that possessed by Kentucky, over so much of the Ohio river as flows between them; and consequently, neither of them can, consistently with the compact, exercise any authority over their common river, so as to destroy, or impair, or obstruct the concurrent rights of the other.
But, as this Court is not inclined to express even an intimation respecting the constitutionality of a legislative act, unless a judicial opinion on such a point be essential to the decision of the case before it, we are not now disposed to moot the questions just suggested, or to give an opinion respecting them; because, in our judgment, if the unconstitutionality of the act of 1836 be admitted, nevertheless, the magistrate below had *23 jurisdiction to decide on the cases brought before him, involving the validity of the statute, and the consequential right to the sums of money claimed under it, by one of the appellants.
An unconstitutional act, being void, can confer consequently, a magistrate could not take cognizance of an action for a penalty, if the right to do so, depended exclusively upon the statute imposing it. But if the jurisdiction exists independent of the statute, the fact that, the def't does not owe the debt — as he does not, if the statute is void- will not oust the jurisdiction, nor transfer it to another tribunal; the magistrate must decide that, as well as other questions raised — subject to correction by appeal to the circuit court: his judgment, either way, will be valid until it is reversed. A judgment in favor of the plaintiff would not be void merely because it was founded upon a void claim; though it would certainly be erroneous. Consequently, the count could not upon the ground of the unconstitutionality of the statute, interpose by writ of prohibition, to prevent the magistrate from proceeding.
Each warrant being of the nature of an action of debt for a sum of money not exceeding fifty dollars, we cannot perceive why, if any court could have exercised jurisdiction, a justice of the peace could not be entitled to cognizance under the statute of 1828, extending his jurisdiction to demands not exceeding fifty dollars, arising from contract, express or implied; for it is well settled, that the law implies a contract to pay every penalty which it prescribes, and that an action of debt may be maintained to recover it, unless some other exclusive remedy be provided.
When a warrant for a debt of fifty dollars was returned executed, the question to be decided, was, whether the defendants owed the plaintiff the amount claimed; or any sum within the jurisdiction of the officiating magistrate. If the act of 1836 be unconstitutional, and therefore void, and if also, the magistrate would not, independently of that statute, have had jurisdiction to decide on a demand for fifty dollars claimed as a penalty due from the defendants to the plaintiff in the warrant, there could be no doubt that he would have had no jurisdiction; because his only authority would have been a void statute, which could confer no power. But if, without the enactment of 1838, he had jurisdiction over a suit for debt, on a claim not exceeding fifty dollars, the fact that there was no debt, because the statute under the sanction of which alone it could exist, was void, could not either oust or translate the jurisdiction to decide whether the debt, as claimed, was due or not. If the statute be unconstitutional, he ought to have so decided, and consequently he erred in rendering a judgment for the plaintiff in the warrant, and that error might have been corrected by an appeal to the Circuit Court.
*24 But if he had no jurisdiction, his judgment was not merely erroneous — it was void, and a ministerial officer might have been guilty of trespass in attempting to enforce it by execution. Is the judgment void? We think not, even if the act of 1836 be a nullity. A judgment, however erroneous, is not void merely because it was ordered on a void claim, It can never be void when the Court which rendered it had jurisdiction over the suit brought to obtain it, and a right to decide whether the demand be legal and enforcible or not.
If, instead of a penality of fifty dollars, the statute had denounced one of five hundred dollars, and an action of debt had been brought in the Circuit Court of the county in which the warrant was issued, could it have been said that that court had no jurisdiction upon the hypothesis that the statute is unconstitutional, and therefore no penalty had been incurred?
In the case of Tobias Watkins, that question has been, in effect, decided in the negative. In that case, it was contended by the counsel of Watkins, that the indictment, under which he had been convicted and imprisoned, did not charge any offence of which the Court had cognizance, and that, therefore, the judgment was void, and his imprisonment consequently illegal. But the Supreme Court overruled his application for a habeas corpus, because although, for the reason just suggested, the judgment was erroneous, nevertheless, as the court which rendered it had criminal jurisdiction in similar cases, its judgment was not void, and observed as follows: “To “determine whether the offence charged in the indictment be, legally punishable or not, is among the most “unquestionable of its (the circuit court’s) powers and “duties. The decision of this question is the exercise “of jurisdiction, whether the judgment be for or against “the prisoner. The judgment is equally binding in the “one case and in the other; and must remain in full “force, unless reversed regularly by a proper superior “ court capable of reversing it.
“Had any offence against the laws of the United “States been in fact committed, the Circuit Court for "the District of Columbia could take cognizance of its *25 "The question whether any offence was or was not "committed, that is, whether the in betment did or did "not show that an offence had been committed, was a “question which that court was competent to decide.” 3 Peters, 296.
And in Williams et al. vs. Anreyd et al. 7 Cranch, 423, it was decided that the condemnation of goods captured under the Milan decree was not void for want of jurisdiction in the French Court of Prize in which it was pronounced, even though the Supreme Court of the United States was clearly of the opinion, that the decree of Milan was a palpable violation of the law of nations, and therefore, the goods were not prize, nor liable to condemnation as such.
The principle of those cases is applicable to this; and, when applied, leads to the conclusion that the magistrate having jurisdiction over the subject matter (debt on implied contract) and the amount (fifty dollars,) had a right to decide whether the penalty sued for was legally recoverable, or, in other words, whether the statute under which it was claimed, was valid or void; and that if the statute be unconstitutional, that fact does not show that the magistrate had no jurisdiction over the suit, but would prove only that his judgment was erroneous.
In England, a prohibition may go to a spiritual court, if it decide erroneously respecting the common or statute law. But the reason is only because such a court has no jurisdiction, except in matters controlled by the civil and canon laws.
In this case, the magistrate having a general jurisdiction over demands ex contractu amounting to not more than fifty dollars, the only question was, not whether he could adjudicate upon the warrant, but how he should decide— and consequently, he had a right to adjudicate, and therefore to decide whether the statute, in virtue of which the sum of fifty dollars was claimed, was binding or void.
Had he decided that the statute of 1836 is unconstitutional, and that, therefore, the plaintiff in the warrants was entitled to nothing, and should pay the costs — might *26 not the judgment for costs have been legally enforced? Certainly and undeniably, as we think, if, as we have said, and confidently believe, the magistrate had jurisdiction over suits for debts not exceeding fifty dollars, founded on implied contracts. But jurisdiction so to decide in favor of one party necessarily implies the judicial authority to decide for the other party.
Several different warrants are issued by a J. P. to recover penalties for the violation of a statute, each against the same several def’ts: they may unite in a joint declaration in prohibition, to prevent further proceedings, before or after judgment, by the justice: and he may be made a co-def’t with the plt’f in the warrants.
In prohibition, if it appears on the face of the proceedings, that the inferior tribunal could not take jurisdiction, no averment, that a plea to the jurisdiction was pleaded & overruled, is necessary; but it is, if consent, waiver of objection, or default, would give the jurisdiction.
The old form of proceeding in prohibition— by a qui tam dec’n.
*26 And the magistrate having such jurisdiction the circuit court had no right to interpose by a writ of prohibition, and could relieve the complaining party by appeal only; for, as already suggested, if the magistrate had jurisdiction to decide whether the demands asserted in the warrants were legal or void, the Circuit Court had no power to prevent his judicial action in any of those cases by a writ of prohibition.
II. As the warrants were against the appellants jointly, and all for the like cause, we perceive no solid objection to a joint declaration by all, to prohibit proceeding in any and all of the cases, either before or after judgment; and there can be no doubt on the score of authority, that the magistrate was not improperly joined as a co-defendant.
Nor was it necessary, in such a case as this, to aver that a plea to the jurisdiction had been overruled; for if the magistrate had no jurisdiction, that fact appeared on the face of the proceedings, and in such a case, there being nothing extraneous to plead, a prohibition may be granted, either before or after judgment, without plea, because the defendant in the warrant could not by consent or waiver, confer jurisdiction, if, in consequence of the alleged unconstitutionality of the statute of 1836, the magistrate had no cognizance over the case. It is only when a court may acquire jurisdiction by consent, or waiver of objection, or by default, that a plea to the jurisdiction is necessary to the granting of a prohibition. Jacob's, Law Dict., and Comyn's Dig., title Prohibition.
But the objection to the declaration chiefly relied on in the argument, was that it is not qui tam.
Anciently, a common law court would not grant a prohibition unless there had been some contempt in proceeding after the service of an original writ of prohibition *27 issued out of Chancery, and then, upon an alias and pluries directed to the party, an attachment might be issued returnable to the King’s Bench or Common Bench; upon which a declaration might be filed, for damages for the contempt. And therefore, as for every contempt of the King’s authority, the action, when any suit was brought, must have been qui tam, the practice of thus declaring first obtained.
The modern practice in suits for prohibition, in pursuance of which, the dec’n need not be, and should not be, qui tam. And, if such a clause was proper, the omission of it, would be but matter of form, and, in the state, no ground for demurrer.
But the modern practice has been to dispense with the original writ of prohibition, and, in lieu of it, to file, in the first instance, in a common law court, a suggestion of facts, with a prayer for prohibition; and thereupon obtain a rule to show cause why a prohibition should not be issued; upon the return of which, either the court or the party cited may require a declaration. And, in such a proceeding, it is evident that, prior to the filing of the declaration, there can have been no contempt in fact, for which damages could be recovered; and therefore, in such a case, the suggestion of contempt, and the qui tam form of declaring, are mere fictions which are intraversable. Croucher vs. Collins, 1 Saunders's Rep. 136, n. 1, 2, 3. And consequently, a failure to aver that a writ of prohibition had been delivered, is no cause of demurrer. Ibid. n. 3, and Bishop vs. Eagle, 11 Mod. 263.
It must be obvious, therefore, that when, as in this case, and in cases generally now, there has been no contempt, and the party declaring is not entitled to, and does not sue for, damages, the ancient fiction is not only unnecessary, but superfluous. And if so, the declaration need not be, and, in strict propriety, should not be, qui tam.
Moreover, it is admitted to be only matter of form; and therefore, the omission of it here, now, cannot be fatal on demurrer.
What has been already said is sufficient to show, that the judgment should not be deemed erroneous on the ground that it prohibits proceeding in more cases than one, and both before and after judgment.
There is, therefore, in the opinion of this Court, no other error in the record than the one resulting from the inappropriateness of proceeding by a writ of prohibition, *28 to prevent that which the magistrate had judicial authority to do. If the plaintiffs have been unjustly harrassed, other and different remedies are provided.
Mandate, for judgment of constitution.
Because there was no proper cause for a writ of prohibition, the judgment must be reversed.
Wherefore, it is considered by this court, that the judgment of the Circuit Court be reversed, and the cause remanded, with instructions to sustain the demurrer to the declaration, and give judgment of consultation, for the appellants.