## WEDDING *v.* MEYLER.

ERROR TO THE WARREN CIRCUIT COURT OF THE STATE OF
KENTUCKY.

No. 125. Argued January 14, 15, 1904.—Decided February 23, 1904.

Under the statute passed in 1789 by Virginia, known as the "Virginia
Compact," and the act of Congress of February 4, 1791, c. 4, 1 Stat. 189,
making Kentucky a State, the State of Indiana has concurrent jurisdiction,
including the right to serve process, with Kentucky on the Ohio River
opposite its shores below low water mark. An Indiana judgment de-
pendent for its validity upon a summons served on that part of the river
is entitled to full faith and credit when sued upon in another State. The
effect of the above mentioned acts in giving jurisdiction to Indiana is a
Federal question.
Where a decision by the state court of the Federal question appears to have
been the foundation of the judgment a writ of error lies.
The writ of error runs to a lower court when the record remains there, and
the judgment has to be entered there after a decision of the question of
law involved by the highest court of the State.

THE facts are stated in the opinion.

*Mr. Merrill Moores,* with whom *Mr. Charles W. Miller*
Attorney General of the State of Indiana, and *Mr. Cassius C.
Hadley* were on the brief, for plaintiffs in error:

As to the Federal question.

The first four assignments of error state a Federal question
arising under the first clause of section 709, Rev. Stat.

The fifth, one arising under the third clause; and the sixth,
one arising under the second clause.

As to assignments under the first and second clauses, it is
sufficient that it appear that the validity of the statute was
drawn in question and it is not necessary that any right be
"specially set apart or claimed." *Columbia Water Power Co.*
v. *Columbia Electric Street Ry. Co.,* 172 U. S. 475, 488; *Yazoo
& Mississippi Valley Ry. Co.* v. *Adams,* 180 U. S. 1, 14.

The Federal questions were necessarily involved in this case,
and, as the Kentucky court decided them, it is not material

whether that court stated them as Federal questions or not. *Green* v. *Van Buskirk*, 5 Wall. 307, 314; *S. C.*, 7 Wall. 139, 145; *Carpenter* v. *Strange*, 141 U. S. 87, 103; *Huntington* v. *Attrill*, 146 U. S. 657, 683; *Mills* v. *Duryee*, 7 Cranch, 481, 484; *Christmas* v. *Russell*, 5 Wall. 290, 302; *Cooper* v. *Reynolds*, 10 Wall. 308, 316; *Maxwell* v. *Stewart*, 22 Wall. 77, 81; *Insurance Company* v. *Harris*, 97 U. S. 331, 336; *Hanley* v. *Donoghue*, 116 U. S. 1; *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265, 292; *Atherton* v. *Atherton*, 181 U. S. 155, 160; *Bell* v. *Bell*, 181 U. S. 175; *Jacobs* v. *Marks*, 182 U. S. 583, 587; *McCullough* v. *Virginia*, 172 U. S. 102, 116; *Douglas* v. *Kentucky*, 168 U. S. 488, 502; *Walsh* v. *Columbus, H. V. & A. R. R. Co.*, 176 U. S. 469, 475; *Stearns* v. *Minnesota*, 179 U. S. 223, 233; *Wilson* v. *Standefer*, 184 U. S. 399, 411.

Where the state court has granted a petition for a rehearing which states a Federal question, and has considered it, the question is saved. *Mallett* v. *North Carolina*, 181 U. S. 589, 592.

Under the rule requiring opinions to be sent up with the record, it is a sufficient compliance with the words " specially set up and claimed " if it appear that the right was fully considered in the opinion and ruled against the plaintiff in error. *San José Land & Water Co.* v. *San José Ranch Co.*, 189 U. S. 177, 179.

A suit in the courts of one State upon a judgment of a sister State is in itself a claim for full faith and credit and it is set up by filing the complaint.

The compact between Virginia and Kentucky is valid. For statutes and ordinances affecting same, see 11 Hen. St. at L. Virginia, 326, 571; Rev. Stat. p. 13, ed. 1878; 1 Comp. Stat. 1901, LVII, 13 Hen. St. at L. Virginia, 19; Kentucky Stat. 1899, 43, 52, 62. *Handly's Lessee* v. *Anthony*, 5 Wheat. 374, 385; *Green* v. *Biddle*, 8 Wheat. 1, 86; *Pennsylvania* v. *Wheeling & Belmont Bridge Co.*, 13 How. 518, 565, 566, and 18 How. 421, 430.

This court has always sustained and enforced compacts between the States entered into with the consent of Congress, as the Constitution requires.

This compact has been recognized as valid and binding upon the States in. .the following cases in the Federal courts: *Hawkins* v. *Barney,* 5 Pet. 457, 465 ; *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420, 582 ; *McKinley* v. *Carroll,* 12 Pet. 56, 69 ; *Pollard* v. *Kibbe,* 14 Pet. 353, 413 ; *Henderson Bridge Co.* v. *Henderson City,* 173 U. S. 592, 610 ; *Stearns* v. *Minnesota,* 179 U. S. 223, 245 ; *United States* v. *New Orleans,* 17 Fed. Rep. 483, 488 ; *Griswold* v. *Bragg,* 48 Fed. Rep. 519, 522. And see *Poole* v. *Fleeger,* 11 Pet. 185, 209 ; *Virginia* v. *Tennessee,* 148 U. S. 503, 520, 525 ; *Wharton* v. *Wise,* 153 U. S. 155, 168. ·

It has been uniformly held that the contracts made by the States are protected by the Constitution precisely as are contracts between individuals. *New Jersey Bank* v. *Wilson,* 7 Cranch, 164, 167 ; *Providence Bank* v. *Billings,* 4 Pet. 514, 560 ; *Woodruff* v. *Trapnall,* 10 How. 190, 207 ; *Wolff* v. *New Orleans,* 103 U. S. 358, 365 ; *New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 U. S. 650, 672.

Prior to the adoption of the Constitution, compacts between the States were not infrequent and they were indifferently styled as compacts or treaties.· *South Carolina* v. *Georgia,* 93 U. S. 4, 9 ; *Aitcheson* v. *Endless Chain Dredge,* 40 Fed. Rep. 253, 256 ; *Ex parte Marsh,* 57 Fed. ·Rep. 719, 723.

The validity of this compact has been frequently admitted by the Kentucky Court of Appeals. *Arnold* v. *Shields,* 5 Dana (Ky.), 18, 22·; 30 Am. Dec. 669, 673 ; *McFall* v. *Commonwealth,* 2 Met. (Ky.) 394, 398 ; *Louisville Bridge Co.* v. *Louisville,* 81 Kentucky, 189, 194 ; *Garner's Case,* 3 Gratt. 655, 674 ; *State* v. *Plants,* 25 W. Va. 119·; *S. C.,* 52 Am. Dec. 211.

Compacts between the States, sanctioned by Congress, are laws of the United States, and are also. treaties made under the· authority of the United States, and are protected as such by the Constitution, Article VI.

There is a distinction .between ownership and jurisdiction, and there may be jurisdiction without ownership. Vattel, Law· of Nations, Book I, §§ 203, 295 ; *Garner's Case,* 3 Gratt. 655, 708 ; *Re Devoe Manufacturing Co.,* 108· U. S. 401, 411, 412 ; *The Norma,* 32 Fed. Rep. 411, 413 ; *Falmouth* v. *Watson,*

5 Bush (Ky.), 660 ; *Lutz* v. *Crawfordsville*, 109 Indiana, 466 ; *Emerich* v. *Indianapolis*, 118 Indiana, 279 ; *Kaufle* v. *Delaney*, 25 W. Va. 410 ; *Flack* v. *Fry*, 32 W. Va. 364 ; *Neal* v. *Commonwealth*, 17 S. & R. 67 ; *Coldwater* v. *Tucker*, 36 Michigan, 474 ; *S. C.*, 24 Am. Dec. 601 ; *Gould* v. *Rochester*, 105 N. Y. 46 ; *Van Hook* v. *Selma*, 70 Alabama, 361 ; *S. C.*, 45 Am. Dec. 85 ; *Chicago Packing Co.* v. *Chicago*, 88 Illinois, 221 ; *S. C.*, 30 Am. Dec. 545 ; *Albia* v. *O'Harra*, 64 Iowa, 297 ; *State* v. *Franklin*, 40 Kansas, 410 ; *Hagood* v. *Hutton*, 33 Missouri, 244.

If the language of the compact were doubtful, the fact that Indiana and Ohio had, from the very beginning, exercised the same jurisdiction over the Ohio as Kentucky and Virginia and that the jurisdiction thus exercised was acquiesced in and conceded by Kentucky and Virginia would of itself, under the rule of contemporaneous construction recognized by this court, be sufficient to put the question at rest.

As to contemporaneous construction, usage and acquiescence, see *Stuart* v. *Laird*, 1 Cranch, 299, 309 ; *Prigg* v. *Pennsylvania*, 16 Pet. 539, 621 ; *Cooley* v. *Board of Wardens*, 12 How. 299, 315 ; *Cooper Manufacturing Co.* v. *Ferguson*, 113 U. S. 727, 733 ; *The Laura*, 114 U. S. 411, 416 ; *Auffmordt* v. *Hedden*, 137 U. S. 310, 329 ; *Schell's Executors* v. *Fauché*, 138 U. S. 262, 572 ; *Field* v. *Clark*, 143 U. S. 649, 691 ; *McPherson* v. *Blacker*, 146 U. S. 1, 27 ; *Fairbank* v. *United States*, 181 U. S. 283, 309 ; *Carlisle* v. *State*, 32 Indiana, 55 ; *Sherlock* v. *Alling*, 44 Indiana, 184 ; *Dugan* v. *State*, 125 Indiana, 130 ; 9 L. R. A. 321 ; *Welsh* v. *State*, 126 Indiana, 71 ; 9 L. R. A. 664 ; *Memphis & Cincinnati Packet Co.* v. *Pikey*, 142 Indiana, 304 ; *Church* v. *Chambers*, 3 Dana (Ky.), 274, 278 ; *Arnold* v. *Shields*, 5 Dana (Ky.), 18, 22 ; *S. C.*, 30 Am. Dec. 669, 673 ; *McFall* v. *Commonwealth*, 2 Met. (Ky.) 394, 398 ; *Garner's Case*, 3 Gratt. 655, 676, 736 ; *State* v. *Plants*, 25 W. Va. 119 ; *S. C.*, 52 Am. Dec. 211 ; *State* v. *Faudré*, W. Va. Nov. 14, 1903.

In the Ohio decisions, it is apparent that the jurisdiction exercised by the State over the Ohio River is based on the Virginia compact. *Lessee of Blanchard* v. *Porter*, 11 Ohio, 138 ;

142; *Stephens* v. *State,* 14 Ohio, 386, 389; *Eckert* v. *Colvin,* 1 Ohio Dec. (reprint) 11; 2 West. L. J. 54; *State* v. *Hoppess,* 1 Ohio Dec. (reprint) 105; 2 West. L. J. 279; *Garner's Case,* 3 Gratt. 754; *Charge to Grand Jury,* 32 Weekly Law Bull. 275.

The Federal courts of Ohio and Indiana have always exercised admiralty jurisdiction over the Ohio River. *McGinnis* v. *The Pontiac,* 5 McLean, 359; *S. C.,* 16 Fed. Cas. 8801; *Seven Coal Barges,* 2 Biss. 297; *S. C.,* 21 Fed. Cas. 12,677; *The Lewellen,* 4 Biss. 156; *S. C.,* 16 Fed. Cas. 8307; *Longstreet* v. *Steamboat R. R. Springer,* 4 Fed. Rep. 671; *The Liberty No. 4,* 7 Fed. Rep. 226; *The Guiding Star,* 9 Fed. Rep. 521; *The Guiding Star,* 18 Fed. Rep. 263; *The Cherokee,* 15 Fed. Rep. 119; *The Thomas Sherlock,* 22 Fed. Rep. 253; *Baumgartner* v. *The W. B. Cole,* 49 Fed. Rep. 587; *Memphis & Cin. Packet Co.* v. *Overman Carriage Co.,* 93 Fed. Rep. 246; *The City of Clarksville,* 94 Fed. Rep. 201; *Bennitt* v. *Guiding Star,* 53 Fed. Rep. 936; *Wilbour* v. *Hegler et al.,* 62 Fed. Rep. 407; *Kineon* v. *The New Mary Houston,* 69 Fed. Rep. 362.

The executive, legislative and judicial departments of Indiana have not only claimed, but have actually exercised jurisdiction of every kind over the Ohio River where it serves as a boundary, for a hundred years. For an almost equal length of time the States of Ohio and Illinois have done the same thing. The States of Kentucky, Virginia and West Virginia have not only not disputed this exercise of authority, but their courts and their legislatures have conceded that it is rightful. Under such conditions, where the authority is of doubtful origin, the acquiescence of Kentucky for so long a time is, in the words of this court, " conclusive of " Indiana's " title and rightful authority." *Indiana* v. *Kentucky,* 136 U. S. 479, 509; Vattel's Law of Nations, Bk. II. cxi, § 149; *Edwards County* v. *White County,* 85 Illinois, 392. As to what is territorial concurrent jurisdiction, see 12 Am. & Eng. Ency. of Law (1st ed.), 296; Rapalje & Lawrence's Law Dictionary; Bouvier's Law Dictionary; Rorer Interstate Law (2d ed.), p. 438; *Wiggins Ferry Co.* v. *Reddig,* 24 Ill. App. 260, 265;

*Sanders* v. *New Orleans & St. Louis Anchor Line,* 97 Missouri, 26, 30 ; *Swearingen* v. *Steamboat Lynx,* 13 Missouri, 519 ; *State* v. *Metalf,* 65 Mo. App. 681, 687 ; *Cooley* v. *Golden,* 52 Mo. App. 229 ; *State* v. *Mullen,* 35 Iowa, 199, 201 ; *Buck* v. *Ellenbolt,* 84 Iowa, 394, 396 ; *S. C.,* 15 L. R. A. 187, 189 ; *Opsahl* v. *Judd,* 30 Minnesota, 126, 129 ; *State* v. *George,* 60 Minnesota, 503, 505 ; *State* v. *Cameron,* 2 Pinney (Wis.), 490, 495 ; *J. S. Keator Lumber Co.* v. *St. Croix Boom Corporation,* 72 Wisconsin 62, 95 ; *S. C.,* 7 Am. St. 837, 858 ; *Roberts* v. *Fullerton,* (Wis.) 93 N. W. Rep. 1111 ; *State* v. *Davis,* 25 N. J. L. 386 ; *Commonwealth* v. *Frazee,* 2 Philadelphia, 191, 193 ; *Neal* v. *Commonwealth,* 17 S. & R. 67 ; *Commonwealth* v. *Shaw,* 22 Pa. C. C. 414 ; *S. C.,* 8 Pa. Dist. 509 ; *Aitcheson* v. *Endless Chain Dredge,* 40 Fed. Rep. 253, 255 ; Gardner's Institutes, 209, 210.

*Mr. D. W. Sanders,* for defendant in error :

Plaintiffs in error are not entitled to a writ of error from this court to the Warren Circuit Court of the State of Kentucky, to review the judgment rendered in that court, dismissing the suit of the plaintiffs in error.

The rule in Kentucky is, that although a case has been decided by the Court of Appeals of Kentucky, upon its return to the trial court it is competent to amend the pleadings and set up a wholly different cause of action, and to transfer it under the amendment from an action at law to a suit in equity, notwithstanding the decision and the mandate of the Court of Appeals. *Hillerich & Son* v. *Franklin Ins. Co.,* 23 Ky. L. R. 631 ; *S. C.,* 63 S. W. Rep. 592 ; *Hord* v. *Chandler,* 10 B. Mon. 403. This rule has prevailed in Kentucky since the adoption of the code of practice. *Fisher* v. *Perkins,* 122 U. S. 527.

This court is without jurisdiction on this writ of error to review the judgment of Warren Circuit Court. *Downham* v. *Alexandria,* 9 Wallace, 659 ; *Gregory* v. *McVeigh,* 23 Wallace, 294 ; *Mullen* v. *Western Union Beef Co.,* 173 U. S. 116 ; *Pinney* v. *Nelson,* 183 U. S. 144.

The record presents no title, right, privilege or immunity that was specially set up or claimed by the plaintiffs in error, and which was passed upon by the Court of Appeals of Ken-

tucky. *Oxley Stave Co.* v. *Butler County,* 166 U. S. 653 ; *Louisville & N. R. R. Co.* v. *Louisville,* 166 U. S. 714, 715 ; *Powel* v. *Brunswick Co.,* 150 U. S. 433 ; *Sewing Machine Co.* v. *Radcliffe,* 137 U. S. 287 ; *Cole* v. *Cunningham,* 133 U. S. 107.

The state courts of Kentucky did not question the power of the Indiana court ; it merely tried the question of its jurisdiction over the person of the defendant.

The State of Indiana has not concurrent jurisdiction with Kentucky over the Ohio River. As to the Virginia cession, see *Wallace* v. *Parker,* 6 Pet. 313.

Without further elaboration of the historical features of this cession of the territory of the northwest to the general government, reference is made to the Constitutional History of the United States by Curtis, volume 1, pp. 86, etc. ; Bancroft's History of the Constitution of the United States, vol. 2, chap. 6, pp. 98 to 118 ; The Life and Times of James Madison, by Rives, vol. 1 ; The Critical Period of American History, by John Fiske ; Randall's Life of Jefferson ; Marshall's History of Kentucky, vol. 1, p. 160, and the address of Judge Alexander P. Humphrey, of Kentucky, before the alumni of the University of Virginia, July 2, 1884 ; History of the People of the United States, by McMasters, vol. 2, p. 477 ; History of the U. S. Courts in Kentucky, by Thos. Speed, pp. 1, 2.

Indiana claims concurrent jurisdiction in her constitution and legislative acts, which undertake to give her courts jurisdiction beyond the territorial limits of the State. It is settled by the decisions of this court that the territorial limits of Kentucky are to low-water mark on the north side of the Ohio river. *Hanley's Lessee* v. *Anthony,* 5 Wheaton, 474 ; *Gardner's Case,* 3 Grattan, 565 ; *Fleming* v. *Kenney,* 4 J. J. Marshall, 158 ; *McFall* v. *Commonwealth,* 2 Metcalf (Ky.), 394 ; *Louisville Bridge Co.* v. *City of Louisville,* 81 Kentucky, 194 ; *Indiana* v. *Kentucky,* 136 U. S. 479 ; *Simpson* v. *Butler,* 4 Blatch. 284 ; *Cowden* v. *Kerr,* 6 Blatch. 280 ; *Carlisle* v. *State,* 32 Indiana, 56 ; *Sherlock* v. *Alling,* 44 Indiana, 191.

The claim of concurrent jurisdiction between two sovereign States over the same territory, where the territorial limits of

each is defined, is a thing wholly unknown to the laws of nations as we usually understand their terms, and has grown up under what has been termed in the United States "interstate" law. Rorer, Interstate Law, 3, 337.

The state courts of Iowa have no power to remove a nuisance beyond the center of the Mississippi River, which consists of a permanent dam of the river on the Illinois side. *Gilbert* v. *Moline Water Power Co.*, 19 Iowa, 319.

Such permanent objects are taxable only in the State in which they are situated, and when the object is a bridge, the part of the bridge and the abutments which are in each State are there taxable. *State* v. *Metz*, 5 Dutch. 122; *Henderson Bridge Co.* v. *Kentucky*, 166 U. S. 150.

The doctrine of concurrent jurisdiction, founded upon convenience, wholly fails when the many inconsistencies are pointed out, as well as the great inconveniences which necessarily result from the enforcement of law, within territorial limits where the boundary is fixed and readily ascertained.

Mr. Justice Holmes delivered the opinion of the court.

This is a writ of error to a Circuit Court of the State of Kentucky on a judgment entered there in pursuance of a mandate of the Court of Appeals of that State. 107 Kentucky, 310, 685. The action was brought upon an Indiana judgment. The answer denied the jurisdiction of the Indiana court. It was not disputed that the service in that suit was on a steamboat in the Ohio River on the Indiana side. At the trial two questions were left to the jury, one whether the person purporting to act as the attorney of the defendant in the Indiana suit was authorized to represent him, and the other whether the summons in that suit was served on the Indiana or Kentucky side of the low-water mark of the Ohio River where it touches the Indiana shore. The jury found against the authority of the alleged attorney, and found that the service was on the Kentucky side of the low-water mark, and therefore, it is assumed, within the boundaries of Kentucky. Thereupon the plaintiffs in error (the original plaintiffs) moved for judgment notwithstanding the findings

of the jury, and judgment was ordered. The defendant excepted and appealed. The Court of Appeals sustained the exceptions and ordered a judgment on the verdict dismissing the action. A judgment was entered, as ordered, in the court below, the above-mentioned Circuit Court, and this writ of error was brought.

It is suggested that the writ of error should have been directed to the Court of Appeals. But it appears from the form of the order of that court that the record remained in the lower court where judgment was ordered to be entered, and the writ properly ran to the court where the judgment had to be rendered. *Rothschild* v. *Knight,* 184 U. S. 334. It is suggested further, that the record does not show a Federal question. But the jurisdiction of the Indiana court was put in issue by the pleadings and it is apparent from what has been said that the decision went on a denial of that jurisdiction because of the place of service. That denial could be justified only on the ground that the compact of Virginia and the act of Congress of February 4, 1791, admitting Kentucky to the Union, did not confer the right of jurisdiction which the Indiana court attempted to exercise and which the State of Indiana claims. The judgment and the opinion of the Court of Appeals both disclose that the decision was against the right under the statutes referred to, and that it was on that ground only that the Indiana judgment was denied any force or effect. The question as to the right of jurisdiction sufficiently appears. *San José Land & Water Co.* v *San José Ranch Co.,* 189 U. S. 177, 180. It is not denied that that question is one which can be taken to this court. *Pennsylvania* v. *Wheeling & Belmont Bridge Co.,* 13 How. 518, 566.

We pass to the question decided by the Court of Appeals. In 1789 the State of Virginia passed a statute known as the Virginia Compact. This statute proposed the erection of the district of Kentucky into an independent State upon certain conditions. One of these was: § 11. "Seventh, that the use and navigation of the river Ohio, so far as the territory of the proposed state, or the territory which shall remain within the limits of this commonwealth lies thereon, shall be

free and common to the citizens of the United States, and the
respective jurisdictions of this Commonwealth and of the pro-
posed state on the river as aforesaid, shall be concurrent only
with the states which may possess the opposite shores of the
said river." 13 Hening, St. at L. 17. (The previous cession
by Virginia of its rights in the territory northwest of the Ohio
had been on condition that the territory so ceded should be
laid out and formed into States. Act of December 20, 1783,
11 Hening, St. at L. 326.) The act of Congress of February 4,
1791, c. 4, 1 Stat. 189, consents and enacts that the "district
of Kentucky, within the jurisdiction of the said common-
wealth" of Virginia, shall be formed into a new State and
admitted into the Union. As a preliminary it recites the con-
sent of the Virginia legislature by the above act of 1789.

Under article 4, section 3, of the Constitution, a new State
could not be formed in this way within the jurisdiction of
Virginia, within which Kentucky was recognized as being by
the words last quoted, without the consent of the legislature
of Virginia as well as of Congress. The need of such consent
also was recognized by the recital in the act of Congress.
But as the consent given by Virginia was conditioned upon
the jurisdiction of Kentucky on the Ohio river being concur-
rent only with the States to be formed on the other side,
Congress necessarily assented to and adopted this condition
when it assented to the act in which it was contained. *Green*
v. *Biddle*, 8 Wheat. 1, 87. Thus, after the passage of the two
acts, it stood absolutely enacted by the powers which between
them had absolute sovereignty over all the territory concerned
that when States should be formed on the opposite shores of
the river they should have concurrent jurisdiction on the river
with Kentucky. "This compact, by the sanction of Congress,
has become a law of the Union. What further legislation can
be desired for judicial action?" *Pennsylvania* v. *Wheeling &
Belmont Bridge Co.*, 13 How. 518, 566.

It hardly is necessary to be curious or technical, when deal-
ing with law-making power, in inquiring precisely what legal
conceptions shall be invoked in order to bring to pass what
the legislature enacts. If the law-making power says that a

matter within its competence shall be so, so it will be, so far as legal theory is concerned, without regard to the *elegantia juris*, or whether it fits that theory or not. But there is no trouble in giving the subsequently formed States the benefit of this legislation. In the case of Kentucky the "compact" which the Virginia statute has been treated by this court as creating, *Green* v. *Biddle*, 8 Wheat. 1, 16, 90, 92, may be regarded as having been in the first stage not only a law but a continuing offer to the expected new State when it should come into being, which was accepted by that State when it came into being on the terms prescribed. And so as to the new States to be formed thereafter on the other side of the river. It is true that they were strangers to the most immediate purposes of the transaction. But it must be remembered that this was legislation, and when it is enacted by the sovereign power that new States, when formed by that power, shall have a certain jurisdiction, those States as they come into existence fall within the range of the enactment and have the jurisdiction. Whether they be said to have it by way of acceptance of an offer, or on the theory of a trust for them, or on the ground that jurisdiction was attached to the land subject to the condition that States should be formed, or by simple legislative fiat, is not a material question, so far as this case is concerned. With that legislation in force there was no need to refer to it or to reënact it in the act which made Indiana a State. That the States opposite to Kentucky have the jurisdiction, whatever it is, over the Ohio River, which the Virginia compact provided for, was not disputed by the majority of the Kentucky Court of Appeals, and has been recognized by this court and elsewhere whenever the question has come up. *Henderson Bridge Co.* v. *Henderson*, 173 U. S. 592, 621; *Arnold* v. *Shields*, 5 Dana, 18, 22; *Commonwealth* v. *Garner*, 3 Gratt. 624, 655, 661, 710, 724, 735, 744; *State* v. *Faudre*, (W. Va.) 46 S. E. Rep. 269; *Carlisle* v. *State*, 32 Indiana, 55; *Sherlock* v. *Alling*, 44 Indiana, 184; *S. C.*, 93 U. S. 99; *Memphis & Cincinnati Packet Co.* v. *Pikey*, 142 Indiana, 304, 309, 310; *Blanchard* v. *Porter*, 11 Ohio, 138, 142.

The question that remains, then, is the construction of the

Virginia Compact. It was suggested by one of the judges below that the words "the respective jurisdictions . . . shall be concurrent only with the States which may possess the opposite shore" did not import a future grant but only a restriction; that they excluded the United States or other States, but left the jurisdiction of the States on the two sides to be determined by boundary, and therefore that the jurisdiction of Kentucky was exclusive up to its boundary line of low-water mark on the Indiana side. This interpretation seems to be without sufficient warrant to require discussion. A different one has been assumed hitherto and is required by an accurate reading. The several jurisdictions of two States respectively over adjoining portions of a river separated by a boundary line is no more concurrent than is a similar jurisdiction over adjoining counties or strips of land. Concurrent jurisdiction, properly so-called, on rivers is familar to our legislation, and means the jurisdiction of two powers over one and the same place. There is no reason to give an unusual meaning to the phrase. See *Sanders* v. *St. Louis & New Orleans Anchor Line*, 97 Missouri, 26, 30; *Opsahl* v. *Judd*, 30 Minnesota, 126, 129, 130; *J. S. Keator Lumber Co.* v. *St. Croix Boom Corp.*, 72 Wisconsin, 62, and the cases last cited.

The construction adopted by the majority of the Court of Appeals seems to us at least equally untenable. It was held that the words "meant only that the States should have legislative jurisdiction." But jurisdiction, whatever else or more it may mean, is *jurisdictio*, in its popular sense of authority to apply the law to the acts of men. *Vicat Vocab.*, *sub. v.* See *Rhode Island* v. *Massachusetts*, 12 Peters, 657, 718. What the Virginia compact most certainly conferred on the States north of the Ohio, was the right to administer the law below low-water mark on the river, and, as part of that right, the right to serve process there with effect. *State* v. *Mullen*, 35 Iowa, 199, 205, 206. What more jurisdiction, as used in the statute, may embrace, or what law or laws properly would determine the civil or criminal effect of acts done upon the river we have no occasion to decide in this case. But so far as applicable we adopt the statement of Chief Justice Robertson in *Arnold* v.

*Shields,* 5 Dana, 18, 22 : "Jurisdiction, unqualified, being, as it is, the sovereign authority to make, decide on, and execute laws, a concurrence of jurisdiction, therefore, must entitle Indiana to as much power—legislative, judiciary, and executive, as that possessed by Kentucky, over so much of the Ohio River as flows between them."

The conveniences and inconveniences of concurrent jurisdiction both are obvious and do not need to be stated. We have nothing to do with them when the law-making power has spoken. To avoid misunderstanding it may be well to add that the concurrent jurisdiction given is jurisdiction "on" the river, and does not extend to permanent structures attached to the river bed and within the boundary of one or the other State. Therefore, such cases as *Mississippi & Missouri Railroad* v. *Ward,* 2 Black, 485, do not apply. *State* v. *Mullen,* 35 Iowa, 199, 206, 207.

*Judgment reversed.*