WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Plaintiff,

v.

ONE PARCEL OF LAND IN MONTGOMERY COUNTY, MARYLAND, Virginia Casey Visnich et al. and Unknown Owners, Defendants.

Civ. A. No. J-78-846.

United States District Court,
D. Maryland.

June 4, 1980.

Gary M. Peterson, J. William Boone, United States Dept. of Justice, Lands and

Natural Resources Division, Washington, D. C., for plaintiff.

Warren Browning, Washington, D.C., R. Edwin Brown, Rockville, Md., for defendants.

## ORDER

SHIRLEY B. JONES, District Judge.

The Court has considered the Memorandum and Order filed by the United States Magistrate dated July 3, 1979. Additionally, the Court has considered the transcript of the hearing before the Magistrate as well as the Memorandum of Points of Law, Facts and Authorities filed by the defendant Visnich in the appeal from the Magistrate's Order denying her Motion to Vacate the Declaration of Taking. Local Rule 81(f). It is this 4th day of June, 1980, by the United States District Court for the District of Maryland,

ORDERED:

1) That the Memorandum and Order of the Magistrate is accepted by the Court and is adopted by the Court in all respects; [1]

2) That defendant Visnich's appeal from that Memorandum and Order is hereby DENIED; and

3) That the Clerk of Court shall mail copies of this Order, along with the Memorandum and Order attached hereto, to all counsel of record.

## MEMORANDUM AND ORDER

FREDERIC N. SMALKIN, United States Magistrate.

### I.

On May 12, 1978, a complaint and a declaration of taking were filed pursuant to 40 U.S.C. § 258a [1] on behalf of the Washington

---

1. *See also, U. S. Steel Corp. v. Multistate Tax Comm'n*, 434 U.S. 452, 98 S.Ct. 799, 54 L.Ed.2d 682 (1978).

1. In any proceeding in any court of the United States outside of the District of Columbia which has been or may be instituted by and in the name of and under the authority of the United States for the acquisition of any land or easement or right of way in land for the public use, the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States. Said declaration of taking shall contain or have annexed thereto—

    (1) A statement of the authority under which and the public use for which said lands are taken.
    (2) A description of the lands taken sufficient for the identification thereof.
    (3) A statement of the estate or interest in said lands taken for said public use.
    (4) A plan showing the lands taken.
    (5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken.

    Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court. No sum so paid into the court shall be charged with commissions or poundage.

    Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding. If the compensation finally awarded in respect of said lands, or any parcel thereof, shall exceed the amount of the money so received by any person entitled, the court shall enter judgment against the United States for the amount of the deficiency.

    Upon the filing of a declaration of taking, the court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner. The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable.

Metropolitan Area Transit Authority (WMATA) for the condemnation of the defendant's fee simple interest in a parcel of real estate located in Montgomery County, Maryland. The public use for which the property was to be taken was "the construction, maintenance and operation of a rapid rail system and related facilities necessary or useful in rendering transit service, or in activities incidental thereto, all as provided in the Act of November 6, 1966, 80 Stat. 1324." Also filed on May 12, 1978 was a Motion for Delivery of Possession. On May 15, 1978, Judge Harvey signed an order granting WMATA immediate possession of a portion of the subject parcel while granting the defendant nine months and thirty days to surrender to WMATA the remaining portion of that parcel. The defendant Visnich filed an answer to the complaint on June 16, 1978. On July 19, 1978, this Court entered an Order appointing commissioners pursuant to Fed.R.Civ.P. 71A(h) to fix the amount of compensation in the present action, but, before such compensation could be fixed, the defendant Visnich filed a Motion to Vacate the Declaration of Taking. A hearing on that motion was held before me on May 14, 1979, the disposition of all pretrial and discovery matters having been referred to me by *en banc* order of this Court dated September 6, 1978. For reasons stated hereinafter, defendant's motion must be denied.

## II.

Defendant's contention that the declaration of taking is invalid is based, essentially, on the theory that "quick-take" condemnation of property in Maryland is *ultra vires* the condemnation power of WMATA. Article III, Section 40, of the Constitution of Maryland provides:

The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being *first* paid or tendered to the party entitled to such compensation. (Emphasis added.)

Since this Maryland constitutional provision apparently prohibits the sort of advance taking ("quick-take") condemnation proce-

dures being utilized by the plaintiff in this and other WMATA condemnation actions arising in Maryland, defendant Visnich argues that, insofar as it derives its condemnation power from the Maryland General Assembly's assent to the interstate compact creating it, WMATA is powerless to utilize quick-take in Maryland.

Pursuant to the requirements of Article I, Section 10, Clause 3 of the United States Constitution, Congress consented to the compact among Maryland, Virginia, and the District of Columbia creating WMATA. Public Law 86–794, 74 Stat. 1031, as amended by Public Law 87–767, 76 Stat. 764 and Public Law 89–774, 80 Stat. 1324. With regard to WMATA's condemnation powers and procedures, this compact provides, at 80 Stat. 1351:

Proceedings for the condemnation of property in the District of Columbia shall be instituted and maintained under the Act of December 23, 1963 (77 Stat. 577–581, D.C. Code 1961, Supp. IV, Sections 1351–1368). Proceedings for the condemnation of property located elsewhere within the Zone shall be instituted and maintained, if applicable, pursuant to the provisions of the Act of August 1, 1888, as amended (25 Stat. 357, 40 U.S.C. 257) and the Act of June 25, 1948 (62 Stat. 935 and 937, 28 U.S.C. 1358 and 1403) or any other applicable Act; provided, however, that if there is no applicable Federal law, condemnation proceedings shall be in accordance with the provisions of the State law of the signatory in which the property is located governing condemnation by the highway agency of such state.

The plaintiff maintains that the WMATA compact has itself become federal law by the consent of Congress to its provisions and, therefore, the afore-quoted compact provision incorporates the quick-take provisions of 40 U.S.C. § 258a as "applicable federal law." The federal statute allowing "quick-take" would, thus, under the plaintiff's theory, override the Maryland constitutional prohibition.

Only a handful of cases on the issue of whether Congressional consent transforms

an interstate compact into federal law have reached the Supreme Court and the holdings of the Court have been contradictory. The first case to reach that Court, *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 54 U.S. (13 How.) 518, 14 L.Ed. 249 (1852), involved a suit by Pennsylvania to halt construction of a bridge by defendant over the Ohio River at Wheeling, Virginia (as it was then) under a nuisance theory. The parties had agreed that the bridge would have to be in derogation of either state or federal law to constitute a nuisance. Since the Virginia legislature had approved the bridge, there was obviously no violation of state law. Pennsylvania therefore had to show a violation of federal statute in order to be successful. Toward this end, Pennsylvania cited the Virginia-Kentucky Compact of 1789, which prohibited the obstruction of the Ohio River. The Court held: "This compact, by the sanction of Congress, has become a *law of the Union*." *Id.* at 565–66. A later case, *People v. Central R.R.*, 79 U.S. (12 Wall.) 455, 20 L.Ed. 458 (1872), involved the State of New York's attempt to bring before the Court a case involving an agreement between New York and New Jersey.[2] Justice Chase wrote: "The assent of Congress did not make the act giving it [*i. e.,* the assent] a statute of the United States, in the sense of the 25th section of the Judiciary Act . . . .. It had no effect beyond giving the consent of Congress to the compact between the two States." *Id.* at 456. A writ of error was therefore dismissed.

A law review article has found it noteworthy that briefs submitted to the Court for the *Central R.R.* case failed to cite *Wheeling*, and the opinion of the Court also failed to mention that earlier case. Engdahl, *Construction of Interstate Compacts: A Questionable Federal Question*, 51 Va.L. Rev. 987, 996 (1965). In addition, the language of the Court in *Central R.R.* says only that the *act giving Congress' consent* does not become a "statute of the United

States" and does not say that compact itself does not become federal law.

In the next "compact" case before the Supreme Court, the *Central R.R.* case was ignored. In *Wedding v. Meyler*, 192 U.S. 573, 24 S.Ct. 322, 48 L.Ed. 570 (1904), the 1789 compact between Virginia and Kentucky was also at issue. The facts in that case were as follows: Defendant was served with Indiana process on a steamboat operating on the Ohio River, which flows between Indiana and Kentucky. After obtaining a favorable judgment in Indiana, the plaintiffs then sued on that judgment in Kentucky. After the Kentucky Court of Appeals ordered the actions dismissed, plaintiffs sought a writ of error from the Supreme Court, alleging denial of full faith and credit to the Indiana judgment. Defendant argued that Kentucky's denial of full faith and credit was justified because the Kentucky jury found that the defendant was served on the Kentucky side of the river, out of the jurisdiction of Indiana. Plaintiff argued, however, that Indiana had concurrent jurisdiction over the river with Kentucky under the 1789 compact. Although Indiana was not a state at the time of the 1789 compact, the Court cited language in the compact with granted Kentucky jurisdiction over the Ohio river "concurrent only with states which may possess the opposite shores of said river," and concluded that the compact encompassed Indiana. The Court went on to cite the *Wheeling* case for the proposition that the assent of Congress to the compact made the compact a law of the Union. *Id.* at 582–83.

A frequently cited case in this field is *Delaware River Joint Toll Bridge Commission v. Colburn*, 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940), which reviewed the case law in the area to that date. In pertinent part, that case held:

> In *People v. Central Railroad*, . . . jurisdiction of this Court to review a judgment of a state court construing a compact between states was denied on

---

2. The Judiciary Act of 1789, as amended in 1867, permitted a writ of error for review of state court decision "where any title, right, privilege, or immunity is claimed under the constitution, or any treaty or statute of or commission held or authority exercised under the United States." Act of Feb. 5, 1867, ch. 28, § 2, 14 Stat. 386.

the ground that the Compact was not a statute of the United States and that the construction of the Act of Congress giving consent was in no way drawn in question, nor was any right set up under it. *This decision has long been doubted* . . and we now conclude that the construction of such a compact sanctioned by Congress by virtue of Art. I, § 10, Clause 3 of the Constitution, involves a federal "title, right, privilege or immunity" which when "specially set up and claimed" in a state court may be reviewed here on certiorari. . . . (Citations omitted and emphasis added.)

*Id.* at 427, 60 S.Ct. at 1040. Although few commentators agree on the exact meaning of the *Colburn* decision, it appears that the Court relied on the "law of the Union doctrine." The respondent in *Colburn* argued that the *Central R.R.* case had overruled that doctrine, but the Court specifically rejected *Central R.R.* in its decision. Further, an earlier case, *Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 58 S.Ct. 803, 82 L.Ed. 1202 (1938) ignored the law of the Union doctrine and, citing the *Central R.R.* case, searched instead through the compact to determine whether its subject matter presented a question of federal common law. Since *Hinderlider* involved the diversion of river waters running interstate, the Supreme Court agreed to hear the case. *Id.* at 110, 58 S.Ct. at 810. Petitioner in *Colburn* cited *Hinderlider* to the Court as an alternative theory on which it could base its decision. The *Colburn* court limited its rule, however, to compacts "sanctioned by Congress." 310 U.S. at 427, 60 S.Ct. at 1040. The law of the Union doctrine would require such a limitation, but petitioner's "federal common law" doctrine did not. In support of its holding, the *Colburn* court cited directly to the *Wheeling* and *Wedding* cases. *Id.* at 427–28, 60 S.Ct. at 1040–41. This lends further support for a law of the Union slant in the *Colburn* decision. The cited law review article claims that the law of the Union slant to *Colburn* has been rejected in "nearly every quarter," 51 Va. L.Rev., at 1006, but the same article claims that those who so reject such an interpretation frequently do so based on *Hinderlider*.

The sole authority for *Hinderlider*, however, was the *Central R.R.* case, which was itself overruled by *Colburn*.

In the 1959 case of *Petty v. Tennessee-Missouri Bridge Commission*, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), the compact in question contained a clause allowing the compact commission to be sued. The courts in one compact state held that identical language in other statutes did not amount to a waiver of sovereign immunity, and cases from the other party state indicated it would take a similar position. The plaintiff sued under the Jones Act in the United States District Court, claiming that the defendant's negligence resulted in her husband's death. The issue presented to the Supreme Court was whether the immunity which the interstate agency might otherwise claim had been waived by the compact provisions. To this the Court answered in the affirmative. Justice Douglas wrote for the Court:

The construction of a compact sanctioned by Congress under Art. I, § 10, cl. 3, of the Constitution presents a federal question. . . . [Citing *Colburn*.] Moreover, the meaning of a compact is a question on which this Court has the final say. . . . [Citing *Dyer v. Sims*, 341 U.S. 22, 71 S.Ct. 557, 95 L.Ed. 713.] . . . Of course, when the alleged basis of waiver of the Eleventh Amendment's immunity is a state statute, the question to be answered is whether the State has intended to waive its immunity. . . . [Citation omitted.] But where the waiver is, as here, claimed to arise from a compact between several States, the Court is called on to interpret not unilateral state action but the terms of a consensual agreement, the meaning of which, because made by different States acting under the Constitution and with congressional approval, is a question of federal law. . . . [Citing *Colburn*.]

*Id.* at 278–79, 79 S.Ct. at 788 (footnote omitted). In footnote 4 of the opinion, Justice Douglas wrote that "[w]hile we show deference to state law in construing a compact, state law as pronounced in prior adjudications and rulings is not binding." *Id.* at

278 n.4, 79 S.Ct. at 788. The Maryland Court of Special Appeals, in *State v. Boone*, 40 Md.App. 41, 46, 388 A.2d 150, 153 (1978) seemed to accept this view when it wrote that "[a]lthough the Supreme Court is not the final arbitrator of state statutes, it is the final arbitrator of interstate compacts." [3]

This Court concludes, therefore, that the assent of Congress to the WMATA compact has had the effect of making that compact federal law, which supersedes the Maryland constitutional prohibition upon quick take. *See McCulloch v. Maryland*, 4 Wheat. 316, 17 U.S. 316, 4 L.Ed. 579 (1819). Consequently, as Judge Murray of this Court held in *Washington Metropolitan Area Transit Authority v. One Parcel of Land in Montgomery County, Maryland, Marvin J. Goldman et al., and unknown owners*, No. HM 77–1306 (D.Md. April 7, 1978):

> [t]he compact language of any other applicable act allows the inference that the Compact not only leaves room for but calls for the application of other federal condemnation acts and other federal proceedings ancillary to the condemnation such as Section 258a, which is merely a "quick-take" provision that can be utilized only when there is a proceeding for condemnation taking place under another federal condemnation statute.

*Id.* at 15. Section 258a therefore governs procedure when WMATA seeks possession of and title to property prior to the final condemnation judgment.

It must be noted that even if the WMATA compact were not considered as federal law and, instead, state law were applied pursuant to the provisions of § 82(b) of the Compact, the result in this case would be the same. In the absence of applicable federal law, § 82(b) dictates that state law governing condemnation by the highway agency of the state in which the property is located shall control. The applicable state law in the instant case is Article III, § 40B [4] of the Constitution of Maryland, which allows the State Roads Commission [5] to exercise quick-take condemnation procedures when, in its judgment, such property is needed by the state for highway purposes. The Maryland constitution, itself, therefore, provides an independent, legally sufficient basis for the legality of WMATA's use of quick-take procedures. Accordingly, defendant's Motion to Vacate the Declaration of Taking must be denied.

In accordance with the foregoing opinion, it is this 3rd day of July, 1979, by the United States District Court for the District of Maryland, ORDERED:

1. That defendant's Motion to Vacate the Declaration of Taking BE, and the same hereby IS, DENIED; and

2. That the Clerk of Court inform counsel of the entry of the foregoing Memorandum and Order.

---

3. This case involved the Interstate Agreement on Detainers.

4. The General Assembly shall enact no law authorizing private property to be taken for public use without just compensation, to be agreed upon between the parties or awarded by a jury being first paid or tendered to the party entitled to such compensation, except that where such property in the judgment of the State Roads Commission is needed by the State for highway purposes, the General Assembly may provide that such property may be taken immediately upon payment therefor to the owner or owners thereof by said State Roads Commission, or into Court, such amount as said State Roads Commission shall estimate to be of the fair value of said property, provided such legislation also requires the payment of any further sum that may subsequently be awarded by a jury. (1941, ch. 607, ratified Nov. 3, 1942).

5. Now the State Highway Administration.