# McGOWAN ET AL. *v.* COLUMBIA RIVER PACKERS' ASSOCIATION ET AL.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 78. Argued November 22, 23, 1917.—Decided December 17, 1917.

As decided by this court in *Washington v. Oregon*, 211 U. S. 127; 214 U. S. 205; Sand Island, in the Columbia River, is part of the State of Oregon, the boundary between that State and Washington being the ship channel north of the Island.

An alleged nuisance consisting of nets connected with buoys and heavily anchored to the bottom of the Columbia River between the line of extreme low tide and the channel, in Oregon,[1] is not subject to abatement by the District Court sitting in the Western District of Washington; assuming that concurrent jurisdiction "on the Columbia" is enjoyed by the State of Washington in virtue of the act organizing Washington Territory (c. 90, § 21, 10 Stat. 179) and the act admitting Oregon into the Union (c. 33, § 2, 11 Stat. 383), such jurisdiction does not reach the bed of the stream in Oregon.

Plaintiff filed its bill in the Western District of Washington to abate a nuisance on the Columbia River, assuming *bona fide* and not without some reason that the *locus in quo* was within that State and District, but later, before taking proofs and before final hearing, moved to dismiss without prejudice because of an intervening decision of this court which fixed the *locus* in Oregon. The motion having been refused and the case retained upon the ground that Washington had concurrent jurisdiction over the River, *held*, (1) that, in face of the doubt concerning the power to abate the nuisance as prayed, the District Court erred in refusing the motion, and (2) that the possibility of granting relief against the defendants *in personam* did not justify retaining the case, against the plaintiff's will.

When a decree dismissing a bill is meant to be without prejudice, the better practice is to express it so.

219 Fed. Rep. 365, affirmed.

THE case is stated in the opinion.

---

[1] The place was on the south side of Sand Island.

*Mr. Bert W. Henry,* with whom *Mr. Franklin T. Griffith, Mr. R. A. Leiter* and *Mr. Harrison Allen* were on the brief, for appellants:

Besides diverse citizenship, the amended bill showed on its face that federal questions were involved. It based the alleged right to exclusive fishery upon the government ownership of the premises and the lease thereof from the Secretary of War. To sustain this contention requires a construction of the President's proclamation withdrawing the Island and a definition of the powers of the Secretary under the act of Congress authorizing leases (27 Stat. 231), as well as a determination of the question of fact whether or not, as also is alleged, defendants' nets were placed in the waters in violation of the Constitution and laws of the United States prohibiting the obstruction of navigable waters. The case is like *Northern Pacific Ry. Co.* v. *Soderberg,* 188 U. S. 526. See also *Wilson Cypress Co.* v. *Enrique Del Pozo y Marcus,* 236 U. S. 635; *Doolan* v. *Carr,* 125 U. S. 618; *Cummings* v. *Chicago,* 188 U. S. 410. Jurisdiction of this court exists also because the jurisdiction of the trial court was involved.

The clause relative to concurrent jurisdiction on the Columbia and other boundary waters in § 2 of the act admitting Oregon as a State appears also in the acts admitting the States bordering upon the Mississippi River and its tributaries. It is undoubtedly a grant of jurisdiction, not only to the courts, but to the legislative and executive departments as well. This court recognized the concurrent jurisdiction of the courts of Oregon and Washington on the Columbia. *Nielsen* v. *Oregon,* 212 U. S. 315. The federal court for Oregon and the Supreme Court of that State have done likewise. *In re Mattson,* 69 Fed. Rep. 535; *State* v. *Nielsen,* 51 Oregon, 588.

The concurrent jurisdiction so granted is *on* the river, and does not include jurisdiction of its bed. *McFall* v. *Commonwealth,* 2 Metc. 394; *Carlisle* v. *State,* 32 Indiana,

55; *Sherlock* v. *Alling*, 44 Indiana, 184; *Gilbert* v. *Moline Water Power Co.*, 19 Iowa, 319; *State* v. *Mullins*, 35 Iowa, 199; *State* v. *Metcalf*, 65 Mo. App. 681; *Memphis C. & P. Co.* v. *Pikey*, 142 Indiana, 304; *Opsahl* v. *Judd*, 30 Minnesota, 126; *Roberts* v. *Fullerton*, 117 Wisconsin, 222; *State* v. *Moyers*, 155 Iowa, 678. It was undoubtedly the intention of Congress in granting such concurrent jurisdiction that acts on the river should be within the jurisdiction of either State. Congress undoubtedly intended also that objects of a permanent nature, which are affixed to or are a part of the bed should not be subject to the grant. Such objects are a part of the real estate, or their location is fixed and permanent so that no question can arise in regard to the State where they are located. There is no need for concurrent jurisdiction over such objects, for they are always in the same place; and so it is that objects which float upon the water, or which move about in the water, and which rest in part on the bed of the stream and in part upon the water, and all rights and liabilities in connection therewith, are within the grant of concurrent jurisdiction, while the bed of the river, together with all permanent structures built upon or into it, are not.

Counsel then described the set nets in question, showing that they must be taken from the water whenever fish were removed and are in no sense attached to or part of the river bed, but are subject to be moved from place to place, and, when anchored, are no more affixed than are boats when at anchor. Such objects, they contended, were peculiarly within the purpose of the grant of concurrent jurisdiction as explained by the courts.

The regulation of the fishing industry is also peculiarly within the grant. How are the two States to enforce their policy of maintaining that industry, if the execution of their laws depends on proof in each case that the act complained of was on one side or the other of the invisible state line? And how are fishermen to enjoy their

rights under either State without danger of exceeding them?

The trial court had jurisdiction of this suit by reason of its jurisdiction over the parties, regardless of the *situs* of the property. *Massie* v. *Watts,* 6 Cranch, 148; *Muller* v. *Dows,* 94 U. S. 444; *Phelps* v. *McDonald,* 99 U. S. 298; *Cole* v. *Cunningham,* 133 U. S. 107; *Philadelphia Co.* v. *Stimson,* 223 U. S. 605; *Robertson* v. *Howard,* 229 U. S. 254; *Louisville & N. R. Co.* v. *Western Union Telegraph Company,* 207 Fed. Rep. 1; *Jennings* v. *Beale,* 157 Pa. St. 630; *Schmaltz* v. *York Mfg. Co.,* 204 Pa. St. 1; *Kirklin* v. *Atlas S. & L. Assn.,* 60 S. W. Rep. 149; *Allen* v. *Buchanan,* 97 Alabama, 399; *Steele* v. *Bryant,* 116 S. W. Rep. 755.

*Mr. G. C. Fulton,* with whom *Mr. C. W. Fulton* was on the brief, for appellees:

The jurisdiction of the trial court was dependent entirely on diverse citizenship and the case therefore is not reviewable here by writ of error.

Assuming that the State of Washington fell heir to the concurrent jurisdiction on the Columbia which was given to the Territory by the organic act, such jurisdiction, by the terms of that act, was limited to criminal offenses committed on the river. The act admitting Washington as a State, however, does not purport to grant even that measure of concurrent jurisdiction, and the earlier act admitting Oregon grants concurrent jurisdiction to Oregon alone. In any case, the grant is of jurisdiction "on" or "upon" the river. All the States bordering on the Missouri, Mississippi and other great rivers and waters have similar provisions in their enabling acts. Numerous cases have involved the construction of such provisions, but in no case has it been held or even seriously considered that such jurisdiction empowers the courts of one State to regulate or determine property rights in the beds or shores of rivers or waters within the boundaries of the opposite

State. See *Gilbert* v. *Moline Water Power Co.*, 19 Iowa, 319; *Mississippi & Missouri R. R. Co.* v. *Ward*, 2 Black, 485; *Roberts* v. *Fullerton*, 117 Wisconsin, 222. The present case is within these authorities. The action is local, the *locus* is in Oregon, and hence the Washington court had no power to proceed. It could not send its officers into Oregon to remove the obstructions complained of.

Appellants base their right to operate appliances fixed to the bed of the river in Oregon solely upon licenses issued by the Fish Commissioner of Washington. But Washington had no power to license such acts beyond her boundaries. *In re Mattson*, 69 Fed. Rep. 535. To be lawful in Oregon they must be licensed by Oregon under her law. Laws 1901, p. 338.

The trial court was without jurisdiction and the decree of the court below should be affirmed.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought by the appellee, the Columbia River Packers' Association, as lessee from the United States of fishing sites and riparian rights on Sand Island in the Columbia River, to compel the appellants to remove certain obstructions placed by them upon the bottom of the channel of the river in front of the plaintiff's premises, and to refrain from longer maintaining them there. Upon a bond being given a restraining order was issued on July 7, 1908; answers and a cross-bill were filed in the following August, and a demurrer to the cross-bill was overruled on October 21 of the same year. The suit had been brought in the Western District of Washington upon the belief that Sand Island was in Washington and subject to the jurisdiction that that State exercised in fact. But on November 16, 1908, it was decided by this court that the boundary between Oregon and Washington was the ship channel north of Sand Island, and that Sand Island belonged to the former State. *Washington* v.

*Oregon*, 211 U. S. 127; *s. c.* 214 U. S. 205.  Thereupon, in June, 1909, the plaintiff filed a petition that the suit be dismissed without prejudice for want of jurisdiction, since it turned out that the land concerned was not within the district for which the court sat.

The District Court dismissed the petition and retained jurisdiction of the cause on the ground that by the Act of Congress of March 2, 1853, c. 90, § 21, 10 Stat. 172, 179, organizing the Territory of Washington, and by the Act of February 14, 1859, c. 33, § 2, 11 Stat. 383, admitting Oregon into the Union, concurrent jurisdiction on this part of the river was reserved to Washington, when it subsequently became a State.  The plaintiff then filed a supplemental bill in which again it prayed that the suit might be dismissed without prejudice if the court had no jurisdiction; the case proceeded to the taking of evidence and final hearing, the temporary injunction was dissolved, an injunction was issued against the plaintiff's interfering with the defendants' appliances, and a final decree for damages caused by the temporary injunction was entered in favor of the defendants.  The plaintiff appealed to the Circuit Court of Appeals, and that court, being of opinion that the bill should have been dismissed on the plaintiff's petition, reversed the decree and ordered the bill to be dismissed.  219 Fed. Rep. 365.  134 C. C. A. 461.

The nuisance complained of consisted of set nets, each anchored by a stone weighing about three hundred pounds to which was attached a short cable which was clamped to a wire rope about twenty-five feet long, to which in its turn was attached a buoy of large timbers.  The nets were placed between the line of extreme low tide and the channel of the river; they were alleged to interfere with the exercise of the plaintiff's rights, and an abatement of the obstruction was prayed for in the bill.  We agree with the Circuit Court of Appeals that, assuming for the pur-

poses of decision that the State of Washington had concurrent jurisdiction "on the Columbia," in the words of the statute (1859, c. 33, § 2), *Nielsen* v. *Oregon*, 212 U. S. 315, 319, the jurisdiction did not extend to the removal of such a nuisance as this. It did not reach the bed of the stream, and the officers of the State would have had no authority to intermeddle with the defendants' nets anchored to the bottom. See *Wedding* v. *Meyler*, 192 U. S. 573, 585. This was an important part of the relief that the plaintiff sought and when it found that it could not have it, it naturally endeavored to dismiss the bill.

It ordinarily is the undisputed right of a plaintiff to dismiss a bill before the final hearing. *Carrington* v. *Holly*, 1 Dickens, 280. *Cummins* v. *Bennett*, 8 Paige, 79. *Kempton* v. *Burgess*, 136 Massachusetts, 192. The discussions have been directed more to the question of costs. When a bill was filed under a mistake common to both parties and in other like cases the plaintiff was allowed to dismiss his bill without costs. *Lister* v. *Leather*, 1 DeG. & J. 361, 368 (1857). *Broughton* v. *Lashmar*, 5 My. & Cr. 136, 144 (1840). Here the decision of this court put the plaintiff in an unexpected position. The question before the District Court was not whether the bill ought to be retained for a decree *in personam* if the plaintiff so desired, or even one of costs, but whether it should be retained against the plaintiff's will for a trial that could not, or at least very possibly might be held unable to, give it what it asked. Upon this point also we are of opinion that the Circuit Court of Appeals was right. Its decree of course meant that the bill was dismissed without prejudice, as prayed, but it is better that it should express the fact and with that modification it is affirmed.

*Decree affirmed.*