George R. GERHARD, Administrator of the
Estate of Edwin J. Kastner, Deceased
(Plaintiff), Respondent,

v.

TERMINAL RAILROAD ASSOCIATION OF
ST. LOUIS, a Corporation (Defendant),
Appellant.

No. 44915.

Supreme Court of Missouri,
En Banc.

March 11, 1957.

Warner Fuller, Arnot L. Sheppard, John P. Montrey, St. Louis, for appellant.

William S. Bahn, St. Louis, for respondent.

HOLMAN, Commissioner.

On the early morning of December 27, 1953, Edwin J. Kastner was killed when his automobile struck a curbing on the north side of Eads Bridge, veered to the opposite side and crashed through a railing on the bridge, thence falling to the ground. The deceased, a bachelor, was survived by his father and a brother. This suit was instituted by his administrator who alleged that the father, 78 years old, was deprived of financial support by reason of Edwin Kastner's death. The trial resulted in a verdict for plaintiff in the sum of $10,000. Defendant has duly appealed.

Eads Bridge spans the Mississippi River between East St. Louis, Illinois, and St. Louis, Missouri. It is owned and operated by the defendant as a toll bridge. It runs generally in an east-west direction and has two decks, the lower one for railroad trains and the upper deck for automobiles and other vehicular and pedestrian traffic. We are here mainly concerned with the automobile deck, particularly that portion thereof, and approaches thereto, located on the Illinois side of the river.

The accident occurred at about 5 a. m. as decedent was driving west from East St. Louis toward St. Louis where he resided. The eastern end of the bridge consists of two highway ramps between which there is a railroad track dividing east and westbound traffic. Each ramp is approximately 20 feet wide and 1,000 feet long. When the ramps reach the level of the vehicular deck they are merged into one four-lane roadway 40 feet wide without any divider. To accomplish this the outer curb of each ramp makes a fairly sharp curve in toward the vehicular deck so that westbound traffic at this point must turn somewhat to the left or south, and eastbound cars, leaving the bridge, must turn to the right (also south).

At the beginning of the westbound approach was a sign, "Slippery When Wet." About halfway up there appeared another sign reading, "Slow-Curve," with a "sloping arrow curved on it." At the west end or top of the ramp the curved curb was from 12 to 58 inches high and was painted in alternating black and yellow stripes. Immediately behind this curb was a sign reading "Slow," the letters having glass reflector buttons on them. All of these signs had been painted about seven months before this occurrence. Also, a "city street light" was located just beyond this curb and very near the reflectorized slow sign.

About ten days before this casualty a vehicle had apparently run into the south concrete fence at a place beginning about 30 feet west of the point where the ramps converged and knocked out 18 feet of the fence. This opening was barricaded with a wooden fence made of 2 x 4's which was wired to the concrete fence at each end. Work had been started on replacing the permanent fence but had not progressed very far at the time plaintiff's decedent was killed. The evidence indicated that the cold weather was somewhat responsible for this delay.

On the morning in question it was dark, cloudy, and there was a mist, but the ground was said to be dry and visibility good. Decedent drove his automobile onto the westbound approach, being followed by two other cars, a cab about 150 feet behind him and an automobile occupied by a Mr. and Mrs. Kreider a short distance back of the cab. The taxi driver testified that the Kastner car was being driven from 45 to 50 m. p. h., at least, but the Kreiders estimated the speed at 25 m. p. h. Decedent had the car lights on and traveled a normal course with no weaving noted. When he reached the top of the ramp the witnesses saw sparks thrown off the right side of his car which indicated that the car wheels were scraping the curbing. The cab driver observed that this caused decedent's car to "flip" around to the left and head for the south side of the bridge. When he arrived at this point the Kastner car was not in sight so he jumped out of the cab and looked down through the opening in the bridge railing and saw the car on the ground below. He immediately radioed for an ambulance and wrecker. The Kreiders also reported the accident to the toll collector on the Missouri side of the bridge. Kastner was pronounced dead upon arrival at the hospital. The automobile had landed on dry ground some 100 feet or more east of the east shore of the river.

A witness who examined the area testified that he found marks where the automobile had evidently scraped against the curbing, and one black skid mark where it had traveled across the roadway and struck the south railing. In addition to striking the wooden barrier, the car appeared to have hit the concrete fence at the west end of the first opening as another 18 feet of the regular fence was knocked out. The regular concrete railing or fence consisted of posts, eight inches square, located about eight feet apart with top and bottom concrete rails running between each post with about seven "down members" running from the top to the bottom rail between each post. All of this concrete construction contained metal reinforcing rods. It was also shown that decedent had driven "both

ways" across this bridge may times before this occasion.

In determining the issues presented on this appeal, our first task is to decide whether the substantive law of Illinois or of Missouri is applicable. As a usual rule the jurisdiction of a state does not extend beyond its boundaries and hence, where a river forms the boundary between two states, each would have jurisdiction only to the middle of the main channel. Since the entire occurrence heretofore detailed transpired within the territory of the State of Illinois, it would ordinarily be assumed that the law of that state would govern. To the contrary, however, plaintiff asserts that the substantive law of Missouri controls since Congress has granted concurrent jurisdiction to each of these states "on the river Mississippi."

The Enabling Act of March 6, 1820, after providing that the eastern boundary of Missouri would be the middle of the main channel of the Mississippi River, states, "*and provided also*, That the said State shall have concurrent jurisdiction on the river Mississippi, and every other river bordering on the said State, so far as the said rivers shall form a common boundary to the said State and any other State or States, now or hereafter to be formed and bounded by the same—such rivers to be common to both * * *." Chap. 22, 3 U.S.Stat. 545, 1 RSMo 1949, p. 36, 1 V.A. M.S. pp. 63, 64. A somewhat similar provision was contained in the Illinois Enabling Act of April 18, 1818. S.H.A. p. 107, 3 U.S.Stat. 428. The question is therefore presented as to whether the instant casualty occurred "on the river Mississippi" within the intent of Congress as expressed in the aforesaid Acts. If this question is answered in the affirmative, then the courts of Missouri must apply the law of this state in the same manner as such would have been applied had the event in question occurred within the actual territorial limits of this state.

We have concluded that this unfortunate accident did not occur "on the river Mississippi" and it therefore follows that the substantive law of Illinois must be held to be determinative herein. Speaking very generally, it has been said that the term "concurrent jurisdiction" in this situation "refers to the effect of the law of each state within the domain of the other covered by water divided by the boundary line between the two states, as regards persons or things on the water concerned or connected in some way with the use thereof for purposes of navigation, and that it has no reference to the land under the water or things of a permanent nature in or over the water. In respect to such matters and rights incident thereto, the jurisdiction of each state on its side of the boundary line is exclusive. Within this rule, 'concurrent' jurisdiction does not empower one state to regulate the individual enjoyment, by people of another state within its boundaries, of property held in trust by such other state for the people within its limits, such as public water and the fish and game that inhabit the same. Neither does such jurisdiction extend to permanent structures attached to the river bed and within the boundary of one or the other state." 49 Am.Jur., States, Territories, and Dependencies, Section 24, p. 245.

There can be no question but that each state has jurisdiction of actions to enforce tort claims and to prosecute certain criminal actions arising from any transaction or incident that may occur anywhere on the water of this river. State v. Kurtz, 317 Mo. 380, 295 S.W. 747; Sanders v. St. Louis & N. O. Anchor Line, 97 Mo. 26, 10 S.W. 595, 3 L.R.A. 390; State v. Metcalf, 65 Mo.App. 681. However, in Wedding v. Meyler, 192 U.S. 573, 24 S.Ct. 322, 325, 48 L.Ed. 570, 66 L.R.A. 833, the Supreme Court of the United States, in discussing a similar provision, stated: "To avoid misunderstanding it may be well to add that the concurrent jurisdiction given is jurisdiction 'on' the river, and does not

extend to permanent structures attached to the river bed and within the boundary of one or the other state." The same court has also held that a provision for concurrent jurisdiction did not extend to the bed of a stream or to the removal of a nuisance consisting of nets anchored to the bottom of the river, beyond the boundary of the state in question. McGowan v. Columbia River Packers' Ass'n, 245 U.S. 352, 38 S.Ct. 129, 62 L.Ed. 342. See also Roberts v. Fullerton, 117 Wis. 222, 93 N.W. 1111, 65 L.R.A. 953; State v. City of Hudson, 231 Minn. 127, 42 N.W.2d 546.

Each of the parties has cited the well-written case of Smoot v. Fischer, Mo.App., 248 S.W.2d 38. The plaintiff therein sought to recover for personal injuries resulting from the collision of two automobiles upon a bridge spanning the Mississippi. Defendant contended that certain statutes of Illinois were applicable since the collision occurred on that part of the bridge that was within the territorial boundary of that state. The court held that the case was within the concurrent jurisdiction of Missouri and therefore governed exclusively by the laws of that state rather than by the law of Illinois. Judge Bennick reached this conclusion by reasoning that since the bridge was being used by the parties as a means of transportation across the river it was a situation analogous to the use of a ferryboat (to which concurrent jurisdiction would unquestionably apply) for that purpose and hence the reasons underlying the grant of concurrent jurisdiction should logically be applicable to each situation. We agree with this conclusion, but we may add that we think the Smoot case represents an extreme and liberal application of the doctrine and that the courts will likely be very reluctant to extend it further.

■ The Smoot case is not contrary, however, to the conclusion we have reached in the instant case. It was clearly restricted to the exact factual situation therein described and the court recognized that the grant of concurrent jurisdiction "does not extend to permanent structures attached to the river bed or the banks, and therefore within the boundaries of one or the other of the adjoining states. * * * Whenever such physical objects themselves, or rights incident thereto, are directly involved in the controversy, they are under the exclusive jurisdiction of the state within whose boundaries the objects are located. * * * But here there is no matter in dispute regarding the MacArthur Bridge itself as a permanent structure connecting the two states on opposite sides of the river." 248 S.W.2d 42. Contrary to the situation in the Smoot case, the matters in dispute in the instant case concern the bridge itself. The entire case is based on the claim that Eads Bridge was negligently constructed and maintained. As previously indicated, since the portions of the bridge about which plaintiff complains are located in Illinois, and the accident occurred there, the case must be determined under the laws of that state.

■ Next, defendant points out that under the law of Illinois contributory negligence is not an affirmative defense, as it is in Missouri, and that it is incumbent upon a plaintiff, under the substantive law of that state, to allege, prove and submit the exercise of due care on his part as an essential, integral element of his claim. It is therefore asserted that in the instant case plaintiff's petition failed to state a claim for relief and that plaintiff failed to make a submissible case because he did not allege and prove his decedent's freedom from contributory negligence. In this defendant relies on our decision in Redick v. M. B. Thomas Auto Sales, Inc., 364 Mo. 1174, 273 S.W.2d 228. In that case we held that the Illinois requirement that a plaintiff prove and submit that he was in the exercise of due care was substantive rather than procedural and hence was required in cases arising in Illinois and tried in the courts of Missouri. We pointed out in the recent case of Andra v. St. Louis Fire Door Co., Mo., 287 S.W.2d 816, 822, that

"while this case did not hold that a plaintiff should also make this allegation in his petition, it would seem that such would logically follow from the reasoning therein since the Illinois cases so hold. Hanson v. Trust Co. of Chicago, 380 Ill. 194, 43 N.E.2d 931." In further reviewing this question we are definitely of the view that it is as much a requirement of substantive law that this element of plaintiff's case be pleaded as it is that such be proved and submitted. We therefore hold that plaintiff was required to allege in his petition and sustain the burden of proving that decedent was in the exercise of ordinary care for his own safety at the time and place in question.

■ In the Redick case the court overruled Menard v. Goltra, 328 Mo. 368, 40 S.W.2d 1053, and other similar cases that had stated the rule to be that the matter of a plaintiff's contributory negligence was remedial rather than substantive, and hence was an affirmative defense which must be pleaded and proved by a defendant, even though the claim arose in Illinois. On a number of recent occasions the argument has been made in this court that Redick is not to be regarded as authoritative and controlling because it is said to be contrary to the case of Sanders v. Illinois Central Railroad Co., 364 Mo. 1010, 270 S.W.2d 731, 735, decided by this court en banc. It has also been argued that Redick represents the minority view, is basically unsound and will be the cause of much confusion in the operation of our courts. Thus far, the court has not found it necessary to consider that contention. We think the question should be determined so that there will be no doubt as to the essential requirements for recovery in cases of this nature.

In view of the attack on the Redick case we have re-examined it and have reached the conclusion that it is sound, logical, and based upon substantial and convincing authority. In re-affirming that decision, we deem it unnecessary to extend this opinion

by stating our reasons for this conclusion for they are the same as those stated in the Redick opinion. To restate them herein would be needless repetition.

In the Sanders case the defendant pleaded contributory negligence but did not offer any instruction on that defense. Plaintiff's verdict-directing instruction, which purported to cover the whole case, did not require any finding on that issue. It was held that this omission did not make the instruction erroneous for the reason that there were no facts or circumstances in evidence to support the submission of the question of contributory negligence. However, the court made the following statement in the opinion with which, it is said, the Redick case is in conflict: "While neither party makes any suggestion that the law of Illinois has either been invoked or must be applied, the question of the submission of the defense of contributory negligence, being a matter of procedure, would in any event be governed by the law of Missouri. Menard v. Goltra, 328 Mo. 368, 40 S.W.2d 1053; Williams v. East St. Louis Ry. Co., Mo.App., 100 S.W.2d 51." It is obvious that the quoted sentence was not necessary to a decision therein and hence was dictum. Moreover, it is apparent that the court was not engaged in a re-examination of the soundness of the rule but was casually restating the holding in the Goltra and other similar cases.

■ We, of course, recognize that a decision by the court en banc is binding upon the divisions of this court. However, the statement under consideration, being dictum, would not make the Sanders case a controlling authority on the issue decided in the Redick case and, to that extent, the Sanders case should not be followed. State ex rel. Dunlap v. Higbee, 328 Mo. 1066, 43 S.W.2d 825; State ex rel. Anderson v. Hostetter, 346 Mo. 249, 140 S.W.2d 21.

In view of our disposition of this case, as hereafter indicated, it is unnecessary to consider the effect of plaintiff's failure to allege that decedent was in the exercise of

872

due care at the time of his fatal injury, and the effect of defendant's failure to challenge the petition prior to the trial, by motion to dismiss. It may be noted, however, that said issue was submitted to the jury both in plaintiff's main instruction and in those given at the request of defendant.

We will therefore proceed to consider the issues relating to the alleged negligence of defendant and the contention of defendant that plaintiff failed to make a submissible case for the reason that there was no substantial probative evidence from which a jury could reasonably have found that decedent was in the exercise of ordinary care at the time his automobile approached and struck the curb herein described.

■ The duty of the defendant, as the owner and operator of the bridge, was to use ordinary care to keep the bridge in a reasonably safe condition for travel thereon. Plaintiff's verdict-directing instruction conjunctively submitted defendant's negligence in (1) failing to warn of the existence of the curve, (2) failure to adequately illuminate the curve, and (3) maintaining the railing in a weakened condition so that it was inadequate for the retention of automobiles. While we may hereafter refer to these assignments of negligence, it will be unnecessary to specifically determine whether the evidence supported that submission.

■ As we have heretofore indicated, plaintiff was required, as an essential element of his case, to prove that decedent was in the exercise of due care for his own safety on the occasion in question. This is a question for the jury "when there is any evidence given on the trial which, with any legitimate inference that may be legally and justifiably drawn therefrom, tends to show the use of due care; but where the evidence, with all legitimate inferences that may be legally and justifiably drawn therefrom, does not tend to show due care on the part of plaintiff, the trial court is justified in instructing the jury to return a verdict for defendant." Greenwald

v. Baltimore & O. R. Co., 332 Ill. 627, 164 N.E. 142, 144. We have concluded, from a consideration of the evidence most favorable to plaintiff, that it could not reasonably be found that decedent was exercising due care on the instant occasion.

■ In cases where no eyewitness to a fatal event is available, the jury may consider, along with the evidence, the natural instinct of men to avoid injury and the plaintiff is permitted to prove the ordinarily careful habits of decedent as tending to prove his freedom from contributory negligence. However, where there are eyewitnesses, as in the instant case, plaintiff cannot rely on the presumption or make such proof. Elliott v. Elgin, J. & E. Ry. Co., 325 Ill.App. 161, 59 N.E.2d 486. He does not contend otherwise.

■ The plaintiff's evidence indicates the following: that the deceased drove his car up the ramp in a straight path until it sideswiped the curved curb, thus causing it to veer rather sharply to the opposite side; a sign (although perhaps dirty) 250 feet back warned of the curve; the curb itself was from 14 to 58 inches high and painted in alternating stripes; while plaintiff's witness, Mr. Kreider, stated that there was no warning sign on the curve, a photograph (plaintiff's Exhibit 2) taken by plaintiff's attorney shortly after the incident showed that a "Slow" sign was immediately behind the curb; the area was illuminated by a light similar to those used by cities in lighting streets; and no fog, smoke or other condition tending to obscure decedent's vision was shown to exist. In addition to all of this, deceased was shown to have driven across the bridge many times and was bound to have been familiar with the existence of this curve. The testimony that the headlights were burning on decedent's car came from the cab driver, a witness for defendant. However, in reviewing the evidence from the viewpoint most favorable to plaintiff, we will assume this to be true as a contrary inference would be more unfavorable to

plaintiff on the issue of his contributory negligence. These lights should have focused on the curb in ample time for decedent to have made the necessary turn to the left. From the facts and circumstances related it should be clear that decedent could have seen the curve if he had been normally observant. In view of the foregoing we think that proof of the exercise of due care on the part of deceased would require evidence of some fact or circumstance tending to explain his failure to see the curb (curve) and hence to have avoided striking it. We are unable to find anything of that nature in the record. The evidence further indicates that there was no reason for him to "crowd" the curb as the ramp was 20 feet wide and was for one-way traffic only. Moreover, there can be no doubt but that the act of decedent in driving his car into the curb was a proximate cause of his subsequent injury and death.

It should be made clear that the basic failure of plaintiff's case is that no fact or circumstance appeared in the evidence to excuse or explain the fact that decedent drove his car into the curb. However, it may be said further that plaintiff is certainly not aided by a consideration of what occurred after the curb was struck and which may tend to indicate the manner in which his car was being operated before striking the curb. On the main deck the distance between the railings, including sidewalks, was about 54 feet. Had decedent been driving with due care, and had his car under control, it would seem that he should have been able, in that distance, to have turned his car back into the roadway, or to have substantially reduced its speed before it struck the south railing. There was no oncoming traffic to prevent it. No explanation appears for his failure so to do. On the contrary, the car angled directly into the concrete fence and struck it with sufficient force to knock out a substantial section of it. It may be conceded that this fence was probably weakened when the other section was knocked out,

but this section was nevertheless attached on the west end and anchored to the bridge by one or more posts. These physical facts show that the car struck the fence with great force and perhaps should cause us to disregard the estimate (favorable to plaintiff) of the Kreiders that the car was being driven at 25 m. p. h.

We need not extend this opinion by a further discussion of the facts as they relate to this issue. The foregoing should be ample to demonstrate the failure of plaintiff to sustain the burden cast upon him. The evidence was not sufficient to reasonably support a finding of decedent's exercise of ordinary care on the occasion in question. Henert v. Chicago & N. W. Ry. Co., 332 Ill.App. 194, 74 N.E.2d 725; Dee v. City of Peru, 343 Ill. 36, 174 N.E. 901; Wilkerson v. Cummings, 324 Ill.App. 331, 58 N.E.2d 280; Elliott v. Elgin, J. & E. Ry. Co., supra.

The judgment is reversed.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court en banc.

All concur.