THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NORMAN PIERRE PITT, Defendant-Appellant.

Fifth District   No. 80-178

Opinion filed May 3, 1982.

John H. Reid and Randy E. Blue, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Don W. Weber, State's Attorney, of Edwardsville (Martin N. Ashley and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Norman Pierre Pitt, appeals from a judgment entered in the circuit court of Madison County on a conviction of armed violence returned by a jury and a sentence of 15 years imposed by the court. Pitt raises two issues by this appeal. First, he contends that the State of Illinois lacks jurisdiction over the instant offense, which was committed on a bridge spanning the Mississippi River between the State of Illinois and the State of Missouri. Second, Pitt asserts that his sentence is excessive because a material element of the offense was the sole aggravating factor on which the circuit court relied in imposing sentence. We affirm the judgment of the circuit court.

The defendant was charged by an amended information with the offenses of murder and armed violence based on the shooting death of Jacqueline Faye Shipley. The evidence at trial established that the defendant shot the deceased while both were passengers in an automobile traveling east on the McKinley Bridge, which spans the Mississippi River between St. Louis, Missouri, and Venice, Illinois. The driver of the vehicle testified that after the shooting began, he made a U-turn on the bridge, after which the body of the deceased was removed from the vehicle and deposited on a westbound lane on the bridge. The defendant then assumed control of the vehicle and returned to St. Louis. The body was discovered about 1305.5 feet west of the eastern end of the bridge's superstructure. The defendant filed a motion to dismiss the charge for lack of jurisdiction which the circuit court denied. After trial, the jury found the defendant not guilty of murder, but guilty of the lesser included offense of voluntary manslaughter and guilty of armed violence. The trial court imposed a sentence of 15 years of imprisonment on the armed violence conviction. No judgment was entered on the voluntary manslaughter verdict. The defendant thereafter perfected an appeal to this court.

■■ The defendant's first assertion of error is that the State of Illinois lacked jurisdiction of this offense. The general rule is that where an act occurs outside of the State of Illinois the circuit courts lack jurisdiction over the offense. (*People v. Bovinett* (1979), 73 Ill. App. 3d 833, 835, 392 N.E.2d 428.) The prosecution in this case predicated jurisdiction on the Act of Congress authorizing the formation of the State of Illinois. This statute provides, in part, for Illinois to have "concurrent jurisdiction on the Mississippi River, with any state or states to be formed west thereof, so far as said river shall form a common boundary to both." ("An Act to enable the people of the Illinois territory to form a constitution and state government, and for the admission of such state into the Union on an equal footing with the original states." (April 18, 1818, ch. LXVII, sec. 2, 3 Stat. at 428, 429 (1818) (hereinafter cited as the Statehood Admission Act).)) The defendant contends that this grant of concurrent jurisdiction does not

extend to a crime committed on an interstate bridge which links two States across the river and that, because the People failed to prove beyond a reasonable doubt that the crime occurred on the Illinois side of the bridge, the defendant's conviction must be reversed. Neither the parties' briefs nor our own research has disclosed any Illinois cases directly on point. Our analysis in construing the Statehood Admission Act will therefore rely on the construction of similar statutes by the courts of other jurisdictions.

The defendant's argument rests on authority which is, at best, tenuous. The defendant cites *McGowan v. Columbia River Packers' Association* (1917), 245 U.S. 352, 62 L. Ed. 342, 38 S. Ct. 129, and *Wedding v. Meyler* (1904), 192 U.S. 573, 48 L. Ed. 570, 24 S. Ct. 322. The issue in *McGowan* was whether a Federal district court had jurisdiction to order the abatement of a nuisance located in a riverbed which had previously been determined to be located outside of the district in which the court sat. The court in *Wedding* expressly refrained from deciding the extent to which a grant of concurrent jurisdiction would "determine the civil or criminal effects of acts done upon the river * * *." (192 U.S. 573, 584, 48 L. Ed. 570, 575, 24 S. Ct. 322, 324.) We therefore find these cases inapplicable to the determination of the extent of concurrent jurisdiction over crimes presented by the instant case. The defendant also cites *Smoot v. Fischer* (Mo. App. 1952), 248 S.W.2d 38, and subsequent cases confining *Smoot* to its facts, as support for the converse of the *Smoot* holding. We find this analysis to be strained and the line of authority therefore unpersuasive. The defendant's brief also notes *State v. City of Hudson* (1950), 231 Minn. 127, 42 N.W.2d 546, but the issue in that case was whether a toll bridge located partly in Minnesota and partly in Wisconsin was exempt from personal property taxes levied by Minnesota. The question of criminal jurisdiction now before us was not at issue in *City of Hudson*, and we therefore decline to consider that case as authority for the defendant's contention.

In *Nielsen v. Oregon*, the United States Supreme Court had occasion to determine the extent to which jurisdiction extended under a statute similar to the one in the case at bar. (*Nielsen v. Oregon* (1909), 212 U.S. 315, 53 L. Ed. 528, 29 S. Ct. 383.) In *dicta*, the court stated that "[u]ndoubtedly one purpose, perhaps the primary purpose, in the grant of concurrent jurisdiction, was to avoid any nice question as to whether a criminal act sought to be prosecuted was committed on one side or the other of the exact boundary in the channel, that boundary sometimes changing by reason of the shifting of the channel." (212 U.S. 315, 320, 53 L. Ed. 528, 530, 29 S. Ct. 383, 384.) The supreme court of the State of Minnesota analyzed a strikingly similar issue in *State v. George* (1895), 60 Minn. 503, 505-06, 63 N.W. 100, 100-01:

"Some of the purposes of this concurrent jurisdiction are to enforce proper police regulation on the river, and to regulate and protect interstate traffic on and across the river, and the persons engaged in the same. If public travel across the river at this point was carried on by means of a ferry boat, there is no question but that this concurrent jurisdiction would attach during the transit across the river. The fact that the appliance by means of which the travel is carried on is a bridge instead of a ferry boat does not change the rule. The question here involved is not whether the courts of Minnesota have jurisdiction over this permanent structure on this island considered as real estate, but whether Minnesota and her courts have jurisdiction over the persons and moving or movable vehicles and things on this bridge. In our opinion, it is not material whether, at the time of the occurrence, such persons happened to be over the water of the river, or over an island in the river, or at one side of the main channel or the other. One of the reasons for establishing this concurrent jurisdiction was to prevent the escape of criminals on account of the uncertainty that so frequently arises as to whether the act was committed on one side of the middle of the main channel or the other side of it. This uncertainty exists just as well when the act is committed on a bridge as when committed on a water craft. A traveler on such a bridge is usually not likely to know whether he is over an island or over the water, or on one side of the main channel or the other."

We therefore hold that where, as here, a criminal act occurs on a bridge over the Mississippi River between Missouri and Illinois, under the Statehood Admission Act the prosecution may establish the jurisdiction of the Illinois courts by proof that the crime occurred on the bridge, and we specifically do not require proof that the crime took place on some particular portion of the bridge.

■■ The defendant's second assertion of error in the circuit court is that the sentence imposed on the defendant is excessive because the sole aggravating factor relied on by the court was a material element of the offense. The trial court found in aggravation that the defendant's conduct had resulted in death. The defendant contends that our supreme court's decision in *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, mandates us to vacate the defendant's sentence and remand for a new sentencing hearing. This we decline to do. *Conover* prohibits consideration of a "factor necessarily implicit" in the charged offense as an aggravating factor in sentencing. (84 Ill. 2d 400, 404.) Armed violence has only two elements: (1) the commission of any felony and (2) while armed with a dangerous weapon. (Ill. Rev. Stat. 1979, ch. 38, par. 9—2(a).) Although death resulting from the defendant's conduct is an element of

voluntary manslaughter, it is not an element of armed violence. The *only* aspect of the underlying offense which is an element of armed violence is the legislature's characterization of the predicate offense as a felony. Because death resulting from the defendant's conduct is not an element of armed violence, even though it is an element of the predicate offense, *Conover* does not prohibit the trial court from considering it for purposes of sentencing. This interpretation of the *Conover* rule is supported by examining the rationale underlying that case in light of the unique nature of the offense of armed violence. Because armed violence is committed when *any* felony is accompanied by the presence of a dangerous weapon, a wide variety of acts may serve as the basis for an armed violence charge. The situation with armed violence, then, is quite the opposite of the *Conover* rationale. In *Conover*, the court held that because "most burglaries and every theft involve proceeds, it is reasonable to conclude that the legislature already considered that factor in establishing the penalties." (84 Ill. 2d 400, 405.) The same generalization does not apply to armed violence—not every armed violence offense involves death—so we do not conclude that the legislature has already considered that factor in establishing the range of penalties for this crime.

Because we have resolved both of the defendant's contentions of error against him, we affirm the judgment of the circuit court of Madison County.

Affirmed.

WELCH and JONES, JJ., concur.