Argued and submitted May 22, affirmed December 20, 1989, reconsideration denied February 9, petition for review denied April 26, 1990 (309 Or 698)

## STATE OF OREGON,
*Respondent,*

*v.*

## TIMOTHY A. NEARING,
*Appellant.*

(M446302; CA A50413)

784 P2d 121

Paul L. Breed, Portland, argued the cause for appellant. With him on the brief was Thomas F. Spaulding, Portland.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Defendant appeals his conviction for driving under the influence of intoxicants. ORS 813.010(1)(b). We affirm.

Defendant was driving his car southbound from Washington to Oregon on Interstate 205. As he was crossing the Columbia River on the Glenn Jackson Bridge, a Washington State police officer stopped him, because he was speeding and driving erratically. There is no evidence as to where on the bridge the officer first saw defendant or where he was when stopped. After administering several different field sobriety tests, the officer concluded that defendant was under the influence of alcohol. He then called the Oregon State Police, which sent one of its officers to the scene. The Oregon officer also administered sobriety tests and, on the basis of defendant's performance, concluded that he was under the influence of alcohol.

After a trial to the court and on the basis of the officers' testimony concerning defendant's performance on the field sobriety tests, the trial court found defendant guilty. It found that the state did not establish venue, but held that it was unnecessary to do so, because Oregon and Washington have concurrent jurisdiction over offenses committed on permanent bridges spanning the Columbia River. Defendant argues that, because the state failed to prove venue, the trial court erred in denying his motion for judgment of acquittal.

■ Section 1 of the Oregon Admission Act provides that Oregon shall have

> "jurisdiction in civil and criminal cases *upon* the Columbia River and the Snake River, concurrently with States and Territories of which those rivers form a boundary in common with this state." Act of Feb. 14, 1859, ch 33, 11 Stat 383. (Emphasis suppled.)

Defendant reads the words "upon the Columbia River" literally and argues that Congress granted concurrent jurisdiction only for offenses occurring *on the waters* of the Columbia River.

Oregon courts have not addressed the issue of whether the concurrent jurisdiction of Oregon and Washington extends to bridges spanning the Columbia. In *Nielsen v. Oregon,* 212 US 315, 320, 29 S Ct 383, 53 L Ed 528 (1909),

which involved the enforcement of Oregon's fishing regulations on the Columbia River, the Court discussed the purpose of concurrent jurisdiction:

"Undoubtedly one purpose, perhaps the primary purpose, in the grant of concurrent jurisdiction was to avoid any nice question as to whether a criminal act sought to be prosecuted was committed on one side or the other of the exact boundary in the channel, that boundary sometimes changing by reason of the shifting of the channel."

That appears to be the accepted view of the reasons for concurrent jurisdiction. *State v. Alexander,* 44 Or App 557, 607 P2d 181, *aff'd,* 289 Or 743, 617 P2d 1376 (1980).

There is little authority on whether concurrent jurisdiction extends to bridges that cross rivers that form state boundaries. In the few cases that have considered the issue, all from other jurisdictions, the courts have held that there was concurrent jurisdiction. In each, the defendant committed a criminal offense on a bridge that spanned a boundary river. The various admission acts granted concurrent jurisdiction for offenses "upon the waters" of the border rivers. The courts held that "upon" the river meant on a bridge, as well as on the water. *State v. George,* 60 Minn 503, 63 NW 100 (1895); *People v. Pitt,* 106 Ill App 3d 215, 435 NE2d 801 (1982); *State v. LeGear,* 346 NW2d 21 (Iowa 1984). *Pitt* and *LeGear* rely on *George,* where the court stated:

"One of the reasons for establishing this concurrent jurisdiction was to prevent the escape of criminals on account of the uncertainty that so frequently arises as to whether the act was committed on one side of the middle of the main channel or the other side of it. This uncertainty exists just as well when the act is committed on a bridge as when committed on a water craft." 60 Minn at 506.

Defendant argues that, although concurrent jurisdiction may be necessary when it is difficult to ascertain a precise boundary, it is unnecessary here, because the Oregon-Washington boundary is precise and could be easily marked on the bridge. It is true that, in 1958, the Oregon and Washington Columbia River Compact fixed the Oregon-Washington boundary. ORS 186.510. That compact, however, did not alter the grant of concurrent jurisdiction in the Admission Act. *W.J. Jones & Son, Inc. v. Stocker,* 271 F Supp 437, 438-39 (D

Or 1967). It is our task to determine if the intent of the Admission Act was to grant concurrent jurisdiction on bridges over the river. There appears to be no persuasive reason why, at the time of the Admission Act, Congress would have granted concurrent jurisdiction over offenses occurring on the water, but not for offenses occurring on bridges above the water. Accordingly, we hold that the Oregon Admission Act created concurrent jurisdiction on bridges that cross the Columbia River between Oregon and Washington.

■ Defendant also assigns as error that the trial court did not allow him to cross-examine the police officers as to their reliance on the "nystagmus gaze" test, which was one of the field sobriety tests given to defendant. Defendant wanted to impeach the officers' testimony by showing that he suffered a medical condition, which he calls "lazy eye syndrome," and that his condition might cause his eyes not to track properly when performing the gaze test. It is unnecessary to determine whether the trial court's refusal was error, because the court did not rely on the results of that test or the officers' opinion that defendant was intoxicated. Rather, the evidence cited by the trial court in reaching its conclusion was defendant's erratic driving, his slurred speech, his admission to the police that he should have stopped at the last rest stop, his perform-ance on the alphabet test, his performance on the finger dex-terity test, his failure on the finger-to-nose test and his poor balance on the one leg stand test. Thus, even if the trial court erred in not allowing defendant to cross-examine the officers as to their reliance on the gaze test, the error was harmless.

Affirmed.